## Case No. 10,265.

### NIGHTINGALE v. SHELDON et al.

[5 Mason, 336.] [1]

Circuit Court, D. Rhode Island. June Term, 1829.

WILLS — CONSTRUCTION — DEVISE TO CHILDREN SUBJECT TO WIFE'S LIFE ESTATE.

1. The testator devised all his estate to his wife for life; if she died before his son J. arrived of age, then to his daughter A. until J. came of age; at that time the estate to be divided among

[1] [Reported by William P. Mason, Esq.]

his three children equally in fee, or to the survivors of them, if either should die leaving no issue. If all his children should die and leave no issue, and his wife should survive them, then to her in fee. *Held*, that the devise might be construed, (subject to the wife's life estate,) either as a devise to all the children in fee absolutely, on J.'s arrival of age, even though the wife was then living, and if they all died before that period without issue then to his wife in fee; or as a devise of the estate to the children in fee determinable on their dying in her lifetime without leaving issue, and in that event an executory devise over to her fee. But if neither construction could be adopted, then, as all the children died in the wife's lifetime, but two of them left issue who survived her, the estate in the event must be considered as intestate estate undisposed of by the will, inasmuch as the devise over to the wife could not take effect.

[2. Cited in Hull v. Holloway, 58 Conn. 215, 20 Atl. 447; and, in brief. in Morris v. Potter, 10 R. I. 61,—to the point that the real objects of the testator are to be accomplished so far as they can be consistently with the principles of law.]

Ejectment for certain land in Providence, R. I. The cause was submitted to the court upon a statement of facts, agreed by the parties, in substance as follows: Edward Spaulding, in July, 1785, made his will, and after providing for the payment of his just debts and funeral expenses, devised as follows: "The residue, &c., the real as well as personal interest, I give and bequeath unto my beloved wife, Audery Spaulding, for and during her natural life, to be improved for her benefit, and providing for my children, relying on her goodness and discretion in that particular, as she may think proper. In case my said wife A. S. should not live 'to see my youngest son, John Spaulding, arrive to the age of 21 years, in that case I give and bequeath the all and full of every part and parcel of such of my estate as may be left by my said wife unto my daughter, Amy Sheldon, to be by her improved, and as a home for my said son, John Spaulding, as an equivalent for my said son's bringing up, till he arrives to the age of 21 years; at which time my will is, that all my then estate, real as well as personal, shall be divided amongst my children, Amy, Edward, and John, equally, share and share alike, to them and their heirs for ever, or to the surviving children, in case of death to either of them leaving no issue. Further, should it so happen, that all my said children should die and leave no issue, and my wife survive them, then and in that particular my will and desire is, that the estate aforesaid be and remain hers in fee simple to dispose of at her will and pleasure." The three children survived the testator. John arrived at 21 years of age, and died afterwards intestate and without issue in 1822, before the death of the wife of the testator. His daughter Amy and her brother Edward died leaving issue, after John arrived at 21 years of age, and before his death. Upon this state of facts, the principal question argued at the bar was, what estate John took under the will of his father, and at what time that estate was to vest. The plaintiff

[Elizabeth Nightingale] contended, that he took an estate in fee simple in remainder after the death of the wife of the testator, which vested in him, either at the death of the testator, or at farthest on his arrival at 21 years of age; and that the devise over had, in the event, wholly failed. The defendants [Edward S. Sheldon and others] contended, that the estate was not to vest until the death of the wife of the testator, and then was to vest in such of the children or their issue as should survive the wife; and that John having died in the lifetime of the wife without issue, he took nothing, and the whole vested in the issue of his brother and sister, who survived the wife.

Mr. Pratt and Thomas Burgess, for defendants.

The construction to be given to a will depends upon, and is governed by, the obvious intention of the testator, and this intention must be collected from the whole will taken together, ex visceribus testamenti. 4 Cruise, Dig. 172–174. And we contend, that, from the obvious intention of the testator, Edward Spaulding, collected from the whole of his will, the following points may be deduced, and are fully established. (1) That the will gives the estate in controversy to Audery Spaulding, wife of the testator, absolutely during the term of her natural life, for her use and for the benefit of the testator's family. (2) That if the said Audery Spaulding should die before John T. Spaulding arrived at the age of 21 years, then Amy Sheldon, daughter of the testator, was to take the same estate for the same purposes for which the widow, Audery Spaulding, held it, to wit, for the bringing up of John until he arrived to the age of 21 years, and in this event, to wit, the death of the widow before John arrived to the age of 21 years, the estate was to be divided at the time that John attained the age of 21 years. But this event, to wit, the death of the widow during the minority, or even the life of John, never happened. (3) That while the widow lived no division was to take place on John's arriving to the age of 21 years, nor was the fee in remainder in the estate to vest absolutely, at that particular time, in any persons in being, but the estate was to remain entire in the improvement of the widow until her death and that the persons, in whom the fee in remainder should absolutely vest, were to depend on who of the children or their issues should be alive at the decease of the widow; and (4) that if none of the children of the testator or their issue survived the widow, then she was to take the remainder in the estate in fee simple absolute, but that if any of the children or their issue did survive the widow, then they were to take the remainder in fee simple absolute, and that the person or persons capable of taking the remainder in fee simple absolute could not be determined until the decease of the widow, or until she survived all the

children and their issue. These points, we say, are fully substantiated by the manifest intention of the testator collected from the will. And it appears by the agreed statement of facts in this case, that the widow, Audery Spaulding, survived all the children of the testator, and John died leaving no issue and that, at the widow's death, the defendants and the issue of Edward Spaulding, son of the testator, under whom the defendants claim part of the estate by purchase, were the only surviving issue of the children of the testator, and consequently, at that time, to wit, at the death of the widow, the remainder in fee in the estate in controversy, vested in them entire, as an absolute estate in fee simple.

Let us suppose, that John, under the will, as the plaintiff's counsel suggests, took a fee simple, subject to be defeated upon the happening of a future contingency. From the whole language in the will, what was this contingency which was to defeat his estate? It clearly was not, as the plaintiff's counsel supposes, the happening of the death of John before he arrived at the age of 21 years, for it is very apparent from the whole will, that the testator did not contemplate any alteration in the character of the estate so long as the widow and any of the children and their issue were living, and that John was not entitled even to a division of the estate when he arrived at the age of 21 years, unless the widow had died previous, but the widow being alive at the time John arrived to the age of 21 years, there was no more alteration in the character of the estate, at that time, under the will, than there was at any other period of John's life before or after that time. But the manifest contingency in this will, which was to defeat the estate of John, was the happening of his death in the lifetime of the widow, which contingency did happen, and thereby defeated the estate of John. The sound and well settled rule of law relative to the construction of wills, is, in the first place, to endeavour by a minute examination of all the provisions of the will, to ascertain, if possible, the true intention of the testator, that the same may be carried into effect; and, in the language of Mr. Cruise, "the intention of the testator must be collected from the whole will, so as to leave the mind quite satisfied about what the testator meant." It is true, however, that the construction, if consistent with the other parts of the will, ought, in the language of the same author, to be such, that the intent of the testator may be rendered consistent with the rules of law; but the same author further adds, "that the technical words are presumed to be used in the sense which the law has appropriated to them, unless the contrary appears; but when the intention of the testator is plain, it will be allowed to control the legal operation of the words, however technical." 4 Cruise, Dig. 171, 172.

The plaintiff's counsel suggests, that all the

devises over after the life estate of the widow are void. being limited upon contingencies, which not having happened, the devises over failed, and the remainder vested in the heirs at law by descent, by which it is presumed we are to understand, that the remainder over to the children, Amy, Edward, and John, was not to take effect, except upon the happening of this contingency, to wit, the death of Audrey Spaulding, the widow, before John arrived to the age of 21 years, and the argument of the plaintiff's counsel, if rightly understood, is, that the testator did not intend, and in fact did not by his will give, the remainder of his estate to his three children, Amy, Edward, and John, and to the survivors of them in case of death of either of them, leaving no issue, unless the widow should die before John arrived to the age of 21 years. In answer to this we contend, that the testator did not intend, that the remainder over to his children should depend upon a contingency which must have appeared altogether unimportant in his mind, to wit; the death of the widow before John arrived to the age of 21 years, but that the fair and obvious intention of the testator was to give the remainder over, at all events, to such of his children and their issue as should survive the widow, let her death happen when it might, but that in .case she should die before John arrived to the age of 21 years, then in that case the estate was to be improved by Amy Sheldon for the bringing up of John until he arrived to the age of 21 years, and then to be divided among such of the children as survived the widow, and the issue of such of them as might be dead, share and share alike. And it is not only very natural, but also very evident from the will, that the testator had in view two several periods of time when he might wish to have the remainder in his estate divided among his children and their issue; the one was on the arrival of John at the age of 21 years, in case the widow should at that time be dead, the other was on the death of the widow at any time after John's arrival at the age of 21 years; and the testator clearly states the manner in which his estate was to be divided. in case the widow died before John arrived to the age of 21 years, for he says it "shall be divided amongst my children. Amy. Edward, and John equally, share and share alike, to them and to their heirs forever, or to the surviving children in case of death to either of them leaving no issue;" and in the same breath he further says, that, "should it so happen, that all my said children should die and leave no issue and my wife survive them, then in that particular my will and desire is, that the estate aforesaid be and remain hers in fee simple to dispose of at her will and pleasure," by which it is clearly to be inferred, that the testator intended, that. in case the widow did not survive all the children and their issue, at her death the estate should be divided in the same manner as he had directed in case a division

should take place on John's arrival at the age of 21 years, and that the time when the remainder was absolutely to vest, so far as it related to the persons who were to take it, was altogether unimportant in the mind of the testator, and he having declared, in one instance, the persons who should take the remainder, to wit, his three children, or the surviving children, in case of the death of either of them leaving no issue, and then immediately proceeding to say, that, in case his wife should survive all his children and their issue, then the remainder should vest in her; the converse of the proposition is. and the clear intention of the testator was, that in case his wife did not survive all his children and their issue, that the remainder should absolutely vest in and be divided among his surviving children (to wit, the children that should survive his wife, and the issue of such of them as might be dead), share and share alike; the word surviving, as used in the will, is a relative term, and clearly has reference to those children who might survive the widow. The view which we have now taken in relation to the remainder over, is supported by analogy, in reference to other expressions and contingencies in the will; for let us suppose, that the widow had died before John arrived to the age of 21 years, and that Edward, one of the children, had also died before that time, leaving issue, and when John arrived to the age of 21 years, the estate must be divided. And now by the will among whom is it to be divided? We think it would not even be contended by the counsel for the plaintiff, but that, in a case like this, the estate would have been divided between John and Amy, and the issue of Edward, who was dead, and yet it will appear, by comparing the expressions in the will, that the testator, in the supposed case, did not give a share of the remainder to the issue of Edward, in case of a division when John arrived to the age of 21 years. with any more perspicuity than he gave the remainder to his children who should survive his wife, and to the issue of such as should be dead, in case she died after John arrived to the age of 21 years. For in the supposed case the testator orders his estate to be divided amongst his three children, Amy, Edward, and John, or the surviving children, in case of the death of either of them, leaving no issue; by which expression it is also apparent, that the testator intended, in case of a division, that the remainder should be divided among such of his children as survived the widow and the issue of such as were dead, share and share alike. But according to the construction contended for by the counsel for the plaintiff, it might with equal propriety be said, in the supposed case, that the contingency had never happened, to wit, the death of either of the children, leaving no issue; for although Edward is supposed to be dead, yet he has left issue, and therefore that the remainder over would be void. being limited upon a contingency which

had never happened, and consequently, in the supposed case, neither the issue of Edward nor the surviving children could have taken any estate by the will. But such a construction, we think, would be doing violence to the manifest intention of the testator.

In conclusion we contend, that it was the manifest intention of the testator, as collected from all the several provisions of his will, not to die intestate as to the remainder of his estate, but that his wife should have the improvement of his estate so long as she lived, and that the fee in remainder did not vest absolutely, but only conditionally, if at all, in any persons, so long as both the widow and any of the children of the testator or their issue were living, and that at the widow's death, the fee in remainder should vest absolutely in such of the children as survived her, and the issue of those that might be dead, share and share alike, but in case it should happen that the widow should survive all the children and their issue, that at the death of the longest liver of them, the remainder over should vest absolutely in her; but that so long as both the widow and any of the children of the testator or their issue were living, the remainder in fee could not vest absolutely, but, if at all, only conditionally, in any persons, and that during such time the person or persons in whom the remainder in fee would ultimately and absolutely vest, could not be known; and that the widow having survived all the children of the testator, and the defendants, and the children of Edward Spaulding, the son, under whom the defendants claim title to a part of the estate in controversy, by purchase, since the death of the widow, being the only issue alive at the death of the widow, the fee in remainder at her death vested absolutely in them, and now belongs to the defendants in fee simple.

Tillinghast & Searle, for plaintiff.

That the intention of the testator is to be regarded in the construction of his will, no doubt can be entertained, and that every part of the will may be examined and recurred to, to ascertain it, is equally true. But that intention is not to be sought in vague conjectures, but from the application of the sober and settled rules of the common law. By the will it is perfectly clear that Audery, the testator's widow, took nothing but a life estate. For as the contingency upon which the fee was devised to her, viz. her surviving all her children and their lawful issue, never happened, no estate beyond her life estate, was ever intended to vest or ever did vest in her. The widow having survived the minority of her son John, who also lived to be over twenty-one years of age, the special devise to the daughter, in the event of the mother's death during that minority, is out of the case, except as it may aid us in the construction of the will, as to the disposi-

tion of the fee. It is also very clear that the testator did not intend that his estate should pass into the actual possession of his children during the life of his widow. But this consideration can give us no aid in deciding the title to the fee. For although the right of possession may be in one person, yet the fee may be in another; the question of right of possession and right of property may be totally distinct and independent, arising from the same or a different grant, according to the circumstances of each particular case. The devise of a life estate to the mother, therefore, affords no rule by which the title to the fee simple is to be ascertained. And although it would not be determined until the close of the widow's life, in whom the fee would ultimately and absolutely vest, yet that affords no objection to an argument against the fee having previously vested in some person liable to be divested by the occurrence of some subsequent event. A fee may be limited upon a fee, and be good as an executory devise. In the case in question, therefore, the fee of the testator's estate may have vested, and, as we contend, did vest, in his children, subject to be defeated by matter subsequent, which, however, never happened, and therefore left an absolute fee simple in those children and their lawful heirs and assigns. The fee of this estate vested, by virtue of the will, in the children of the testator, immediately upon his death, or at farthest immediately upon John's arriving at the period of his majority. It is manifest beyond all doubt, that the testator intended to dispose of all his estate, and it is equally manifest that he intended his children should take it equally. By the will the testator devised all his estate to his wife during her life, and if she should die during John's minority, he devises his property to his daughter Amy, to enable her to educate John until he arrived at the age of twenty-one years. At which time (John's majority) his will is, that all his estate not then expended in the support &c. of the family, shall be divided amongst his three children, their heirs, &c. equally, or the survivors, if any be dead without issue. The remotest period after the testator's death, at which the fee was to vest in his devisees, was John's arrival at full age. The expression in the will, at which time, is not confined to the sentence, or either branch of the sentence, next preceding it, but extends to, and rides over, the whole clause, and definitely fixes the period of vesting. And this is consistent, also, with the life estate of the widow. The fee could vest in the children, subject to her life estate, and the word divided is satisfied with this construction.

It is contended, on the other side, however, that John's title depended on his surviving his mother, and as he died first, he never had any interest in the estate. How that position can be maintained is not easy to be

conceived. By the will it is demonstrable, that she took nothing which was given to John, from the mere fact of her having survived him. The devise over to her was upon the sole condition, that she survived all the testator's children. and all their lawful issues. If all the testator's children and all their children except one had died, living the mother, she would have taken nothing. The devise is not to be taken distributively; she does not take the share of one dying without issue in her life time, but all must die, and the issue of all must die, before the devise over to her takes effect. The whole family of children and grand-children must be extinct, before the title of the survivors is extinct. The widow, not having survived the whole family, took no fee in the estate, and whatever estate John took prior to his death, was not lost or impaired by his mother's surviving him. It is further contended on the other side, that by the will the estate is devised to the testator's children, and their issue, who survived the mother. But there is not a single expression in the will indicating such an intention, nor a single rule of law which supports such an interpretation. The devise to the widow is on condition that she survives all her children and their issue. And the legal inference, say the defendants' counsel, is, that all the estate is devised to her survivors; a deduction both illegal and illogical, and, as we contend, refuted by the whole tenor of the will, and every rule of construction known to the law. It by no means follows, that because the fee was given to the widow upon a contingency that never happened, any of the children therefore are to be disinherited. The fee of the estate in remainder was undoubtedly in all the children during the mother's life. Has it been divested? Has the testator declared, that if John died, living the mother, his share should go to the surviving brother and sister? Is not his intention most manifest, that his children should have his estate equally. after John's attaining his majority? Is there an intimation that that intention is changed, or that the title should be changed, except in one event only, viz. the mother's surviving all her children and their issue? Why should John be disinherited after he reached the years of manhood? The estate is not devised in tail to the grand-children of the testator, but in fee to his children. Edward and Amy, who had children, took a fee. and could dispose of that fee. Why should not John, after his majority? There might be some reason for limiting his title to his arrival at full age, but then the reason ceases, and all subsequent limitations are odious to the law, and are not to be sustained by loose conjectures of the testator's intentions. Suppose the testator had by his will merely devised a life estate to his wife, and provided that if she survived all her children and their issue, she should take the

estate in fee, and said nothing more; can it be pretended that the surviving children only would have taken? Would not the fee have vested equally in all the children, immediately on the testator's death, to be divested from all or any of them, by the mother's surviving them all and their issue? Would not the law pronounce, that all the children took and had a right to hold against all the world, until their mother succeeded at once to all their rights by virtue of the will? And yet the supposed case is far less cogent in favor of the children, than the case in question; for in that case, the intention that the children should take it is by inference only, and in this case the intention of the testator is manifest, that his then children should take in fee the remainder of his estate equally.

The argument of the defendants' counsel supposes, that if Edward had died, leaving issue, that his issue would have taken under this devise to the children, though not expressly named. And hence he infers, that the estate goes to the children and their issue, who survived the mother. That Edward's issue would have taken, let him die when he would, is to us indubitable. The devise to Edward, Amy, and John, of the testator's estate, is to them, their heirs and assigns for ever, and no doubt vested a remainder in fee in them, subject to the sole contingencies of an entire failure of all the children and their issue, prior to the death of the mother, and to Edward's dying without issue during the minority of John. Subject to these events, Edward could dispose of his share of the estate by deed or will, and his children would inherit it, on his death. And the subsequent part of the same devise, in which he gives the share of the child dying without issue, confirms this construction. That clause in the devise, while it shows that the issue of Edward would take, does not enlarge, but restrains the devise from an absolute vested remainder, subject only to the mother's survivorship, to a further contingency, of his dying without issue, prior to John's majority. If, therefore, Edward had died before or after John's majority, and had left issue, he would have died seised of a vested remainder, defeasible only by the mother's surviving all her children and their issue; and Edward's issue would have taken their father's share, as his heirs, unless he had otherwise disposed of it, and would have holden it, subject only to their grandmother's surviving them, their uncle, aunt, and their issue. But in the contingent devise of the fee to the widow, we look in vain for a provision of this kind, or for any language which will sustain the construction of the defendants' counsel. By that devise, it is simply provided, that the mother shall take the fee if she survives all her children and their issue, but it does not provide that the children who survive her alone, and the is-

sue of those deceased, shall take. And no such provision was necessary, the remainder in fee having been previously disposed of. And yet if such had been the testator's intention, we should have found some expression indicative of that intention. If we are correct in our exposition of this will, John had a legal interest in the mortgaged premises, and the plaintiff's title is valid. If we are incorrect in our exposition, then we hold it to be perfectly clear, that nothing beyond a life estate to the widow was legally devised. The contingent devise of the fee to her never took effect, and it has, we contend, been fully shown, that there is no devise to the survivors of the widow, as insisted on by the other side. Unless, therefore, the children of the testator took a vested remainder, as before stated, there is no disposition of the fee, and as to that fee the devisor died intestate. In that case it is perfectly clear, that the estate descended equally to his three children, and that John took one third, which is covered by the mortgage.

Upon the whole it is submitted, that John, at the time of the mortgage, had a vested legal interest in the mortgaged premises, which was not divested by any subsequent event, and that the plaintiff is entitled to the judgment of the court, for possession of the same.

STORY, Circuit Justice. In the construction of wills the cardinal rule is, to follow the intention of the testator, as it is to be collected from the whole provisions of the particular will. If the testator uses words, which have received a technical sense, that sense is presumed to be his own, unless a different meaning is fairly deducible from the context. In that event, the technical sense will bend to the apparent intention. If there are two intentions on the face of the will, one of which is general and consistent with the rules of law; and another special and inconsistent with the rules of law, the latter yields to the former, and if necessary to give effect to the will, may be rejected altogether. The struggle in all such cases is to accomplish the real objects of the testator, so far as they can be accomplished, consistently with the principles of law; but in no case to exceed his intention fairly deducible from the very words of the will.

The interpretation of the present will is certainly not unattended with difficulty; though I confess, that until I had examined the ingenious arguments urged at the bar, I had not supposed, that there was so much matter for controversy. The testator manifestly intended to dispose of his whole estate, real and personal. After providing for the payment of his debts and funeral charges, he bequeaths the residue to his wife, during her life, "to be improved for her benefit, and providing for his children, relying," as he says, "on her goodness and discretion in that particular, as she may think proper." In

case his wife should not live to see his youngest son, John Spaulding, arrive to the age of 21 years, he bequeathed the same estate to his daughter Amy, to be by her improved and as a home for his son John, as an equivalent for his said son's bringing up, till he arrives to the age of 21 years. Then follows this clause: "At which time my will is, that all my then estate, real as well as personal, shall be divided amongst all my children, Amy, Edward, and John, equally, share and share alike, to them and their heirs for ever, or to the surviving children, in case of death to either of them, leaving no issue." Now it is clear, that the estate to his daughter, Amy, was to take effect only upon the contingency, that his wife died during John's minority. And the question first meeting us in the cause is, whether the remainder of the clause is dependent upon that event, or whether it applies to the whole of the preceding provisions of the will, and rides over all of them. In other words, is the estate to be divided when John arrives of age, although the wife is then living; or is it to be divided only in case of her death before that period? The former is the construction contended for by the plaintiff; the latter is contended for by the defendants. If the defendants' construction is adopted, then if the will had stopped here, there would plainly be no devise whatsoever of the remainder after the wife's death, in the events which have happened. We shall presently see, whether the devise over to her helps the defect. But supposing this to be the only clause, which contains any devise to the children, the latter will take nothing under the will, unless this clause is construed to apply to a division of the whole estate (subject to the wife's life estate) on John's arriving at 21 years of age. One doubt arising upon this construction is, that the clause applies as well to personal as real estate; and it may be asked, how could the personal estate be divided during the wife's life, without interfering with her right of enjoyment? Perhaps this objection is not in its own nature insuperable. Testators do not ordinarily distinguish between personal and real estate, and generally suppose them susceptible of the same modifications as to enjoyment and right. It is farther objected, that the clause is found in immediate connexion with a provision for the daughter, Amy, during John's minority, and naturally flows from that. But that again is not decisive; for the testator may still have contemplated the same event (i. e. John's arrival at age) as the period, at which his devises to his children should vest absolutely in them. It is asked, on the other side, and with great force, why the testator should not be presumed to intend a present vested interest in remainder in his children when they were all of age and capable of making a suitable division for their benefit, rather than to postpone all their

interest upon the contingency of their surviving his wife, and by such postponement lead to a preference of unborn issues over his own children? There is much weight in this suggestion. And it acquires additional force, if upon any other construction, the children are, by the terms of the will, left unprovided for, in case the wife should survive John's coming of age. It would be strange, that the testator should so solicitously provide for a division of his estate among his children, if his wife died during John's minority, and yet should leave them unprovided for, if she survived that period, notwithstanding her estate was limited to her own life. To argue such an intention, would be to suppose great want of forethought, or great capriciousness of purpose in the testator.

Let us see, then, whether the subsequent words of the will afford any light to aid us in the proper construction. They are as follows: "Further, should it so happen that all my said children should die, and leave no issue, and my wife survive them, then and in that particular my will and desire is, that the estate aforesaid be and remain hers in fee simple, to dispose of at her will and pleasure." The event never happened. She did survive all the children; but she did not survive their issue. So that the devise over never took effect to enlarge her life estate into a fee. Either, therefore, the remainder is intestate property, divisible among the heirs, and of course John took one third; or the will has operated as an effectual devise of it to the children or their issue. Now this clause does not purport on its face to make any devise whatsoever to the children. It is simply limited to a devise over to the wife, on their dying without leaving issue, in her lifetime. It presupposes that the children had taken the estate by some antecedent provision. If we suppose, that the prior clause, for the division of the estate on John's arriving at 21, was intended to apply generally, there would be no difficulty in reconciling this devise over with such an intention in either of two ways. In the first place, the devise over might be construed to be limited to the case of all the children dying without leaving issue, before John's arrival at age, in which case if any of the children or their issue should survive John's arrival at age, they would take an absolute fee. Or, in the second place, it might be construed to extend to the case of all the children dying without issue, at any time during the life of the wife, and then it would be an executory devise over, after a conditional fee in the children, determinable on that event; and in this view, it would have become absolute by the non-occurrence of the fact, which was to determine it. The clause itself is susceptible of either construction; and so construed, there is no interference with any express intention of the testator. But the defendants contend, (and it is vital to their success in the cause, that they should contend,) that the will completely disposed of the whole estate, and that it contains a devise to such of the children only, or their issue, as should survive the wife, in fee, and that such survivorship is indispensable to their title, and forms the contingency, on which it is to vest. Now, how is this construction made out? There is no clause in the will, expressly making such a provision. The whole argument of the defendant's counsel rests on the ground, that the clause respecting the division of the estate is inapplicable to it. It must then be deduced, if at all, by implication from the terms of the devise over to the wife, in the event of her surviving the children and their issue. But the terms of that devise are just as well satisfied by supposing the testator to have given all his children a vested fee, determinable upon her surviving them and their issue, as by supposing a contingent fee to them, to vest upon the happening of the same event. If, therefore, the case stands equal, how can the court raise any such estate by implication, unless upon the most arbitrary conjecture? But does it stand equal? In the first place, the law generally leans against creating contingent estates, when the words of the will may be satisfied by considering them vested. In the next place, in order to arrive at this conclusion, we must suppose an intention in the testator to deprive his immediate offspring of all present fixed interest in his estate, (however important such an interest might be to their comfort,) when it is plain from other parts of his will, that they were all objects of his affection and bounty. We must suppose, that he deliberately intended to give them a mere contingent interest, and for this purpose to postpone them, as the event might be, and indeed was, in favor of unborn issue, towards whom he could not be presumed to feel any peculiar affection. Such an intention is neither natural nor wise; and a court must go very far in making presumptions, to justify itself in deducing it from such general words. I confess myself not bold enough to undertake it. The prior devise of a life estate to the wife, certainly affords no argument to support it; for that merely points to the order, in which the property is to be enjoyed in possession, and not to the period when it shall vest in right. Let us suppose for a moment the intermediate devise (as to the division of the estate on John's arrival at 21,) struck out of the will, as a view most favorable to the defendants; how then would the case stand? There would be a devise to the wife for life, and a devise over to her in fee, in case she should survive all the children and their issue. That is the very form, which the words of the will must assume, as the defendants' argument connects them. Now, we see at once, that is no devise whatsoever in terms to the children. And yet,

no one can read the words without feeling, that they are the primary objects of his bounty, after the wife's life estate is spent. If after the devise to his wife for life, the testator had added the words, "and after her death the remainder to my three children and their heirs," and then the devise over had followed, could there be a legal doubt, that the court, upon acknowledged and settled principles, must have construed the remainder immediately to have vested in the children upon the testator's death, subject to be defeated by the executory devise over taking effect? I presume not. If the court were driven to give a construction to the will upon the two clauses above-mentioned, drawn into such connexion, and to create an estate by implication in the children, I confess I know not what words more appropriate, or more exact to express such implication, could be used. But it would be sufficient for the present case to say, that the construction, which the defendants wish the court to give to the words of the will, is not in its own nature more probable, or more consistent with any ascertained intention of the testator, than that before suggested.

If it were necessary to decide the case upon the very form of the provisions in the will my present judgment is, that one of two constructions ought to be adopted. 1st. That the clause as to the division of the estate, on John's arrival at 21, should be construed to apply as well to the case of the wife being then alive, as of her being then dead; and in this view the devise over ought to be restrained to all the children's dying during John's minority, without leaving issue. Or, 2dly, putting that clause aside, that the children should be deemed to take a vested estate in fee in remainder after the wife's life estate, with an executory devise over to the wife, if she survived them and their issue. Upon either construction the plaintiff would be entitled to recover. But if these constructions are to be rejected, as not fully supported by any reasonable implication upon the terms of the will, I am most clearly of opinion, that the construction set up by the defendants is indefensible in point of law, and rests upon a far more unsatisfactory and infirm foundation. The consequence, then, must be, from the very doubt of the testator's intention, and from the omission to provide for the case, which has happened, that the estate must be deemed intestate; and then the plaintiff is entitled to recover the one third, which was John's distributable share.

In either view my opinion is, that upon the facts agreed, judgment ought to be entered for the plaintiff. The district judge concurs in this opinion, and therefore judgment must be entered for the plaintiff for one third of the demanded premises.