## MATTHEW F. DUNN *v.* JOHN D. WINSTON.

1. TAX SALE OF LAND.—A sale of land for the taxes due thereon, under the Revenue Act of 1846, only conveys to the purchaser the title of the person in whose name it is assessed; and if the land be assessed in the name of a person who has no interest in it, no title will be acquired by the purchaser.
2. SAME.—A tax is a charge on the property against which it is assessed, for the payment of which the property is primarily liable and not the owner; and a distress and sale of property for the taxes due thereon is a proceeding *in rem* against the property itself, and if in other respects according to law, vests a complete title in the purchaser, whether it be assessed in the name of the true owner or not. The Act of 1846, does not change this rule in reference to sales of land for the collection of the taxes due thereon. Per HANDY, J., dissenting.

In error from the Circuit Court of Rankin county. Hon. John E. M'Nair, judge.

A full statement of the case will be found in the opinion of the court.

*E. H. Lombard,* for plaintiff in error.

*T. P. Ware*, for defendant in error.

FISHER, J., delivered the opinion of the court.

The plaintiff below brought this action under the Pleading Act of 1850, in the Circuit Court of Rankin county, to recover a tract of land in the possession of the defendant.

The land was entered on the 13th of May, 1835, in the names of Ogden, Hadley and Ludlow. Ogden and Hadley having transferred their interest to Ludlow, he conveyed the land to the plaintiff on the 20th of April, 1837. The land was afterwards on the 10th of December, 1840, *patented* by the government to Ludlow.

The title thus acquired of course inured to his vendee, the plaintiff. The evidence having closed on behalf of the plaintiff, the defendant offered to read to the jury in support of his title, a deed made by the tax collector of said county, on the 3d day of April, 1848, to one F. M'Gowan, whereby it appeared that the land in controversy was assessed as the property of Ogden, Hadley and Ludlow, under the provisions of the Act of 1846, and was sold for the taxes due thereon for the year 1847. The court on motion of the plaintiff's counsel rejected this deed as evidence, and this presents the only question, which it is necessary to consider.

We must assume for the sake of the argument, that the plaintiff was both at the date of the assessment and at the date of the sale, the owner of the land, and then determine the question argued by counsel, whether the tax collector's deed is sufficient to defeat or rather to convey the plaintiff's title to M'Gowan; if so, of course the action of the court below was manifestly wrong, in excluding the deed as evidence. The land having been assessed as the property of Ogden, Hadley and Ludlow, when they were not the owners of it, the question is whether the purchaser at the tax sale acquired only their title, or an absolute title, regardless of the true owner, to the land. The solution of this question, must depend upon the provisions of the law, under which the assessment was made, for it may be assumed as undeniably true, that in the absence of express legislation on the subject; the tax collector has no authority to sell the property of an individual, for the payment of his taxes, when he is not shown to be in default in making pay-

ment.   Before an individual can be said to be in default in performing a duty, or in discharging an obligation, such duty or obligation must have been legally created, for the obvious reason, that there can be no violation of that which never existed.   A man can, on general principles, never be in default in paying his taxes, until he has been legally charged with their payment.   A tax is but a contribution, which the law requires individuals to make for the support of the government.   The amount of this contribution, which each individual is required to make, must depend upon the value of articles of property, of which he is ascertained by the proper officer of the government, to be the owner.   The assessor having decided that a particular person is the owner of certain property, determines according to the directions of the law, the amount of tax with which such person shall be charged.   These matters having been determined by the proper authority, the law settles the question as to the tax payer's liability.   Whether the officer has erred or not in charging by the assessment, a wrong person with the payment of the taxes upon the property assessed, makes no difference; if he permit the assessment to stand until it is delivered to the collector, his only remedy is against the assessor for a false assessment, by which such person has been subjected to the performance of a duty, with which another should have been charged.   Such being our understanding of the general rule, without express legislation to the contrary, we will proceed to notice the statute under which the assessment was made.   Acts of 1846, beginning on p. 71, § 13.   This section requires all lands subject to taxation, to be assessed according to their value, to "be judged of by the owners, agents or attorneys thereof upon oath," &c. The very first section on the subject, requires that the owner of the land shall be consulted, and that he or his agent shall ascertain the value thereof, and thus indirectly fix the amount of the tax with which he shall be charged on account of the same.   Section 14, authorizes the assessor to make the assessment, that is, to value the land when the owner, agent or attorney "*thereof*" shall fail to *assess* or to give in the same.   If in the opinion of the assessor, there "shall be a difference in the value of any one tract of land," he is required "to make such subdivisions, and to affix

such valuation on each subdivision as he may think advisable to arrive at the intrinsic value thereof." What does the law mean, when it says, if there shall be a difference in the value of any tract, &c., the same shall be subdivided, &c. ? Most clearly, when the same tract shall belong to the same person. Here again, we find that the assessment must be in the name of the owner at the time. The owner failing to assess, or to give in his land, the law requires this duty to be performed by the assessor, who is authorized to do no more than the owner could do, if performing the same duty himself. Section 15, regulates the manner in which the assessment shall be made. The assessor must commence assessing in the lowest number of township and range in his county, and the north-east corner of each township. He is required to "enter in succession all the subdivisions of each section, as they may belong to different individuals, or if the whole of a section belongs to the same person, then the whole may be set down in one entry upon the assessment list," unless it be necessary to subdivide it, to increase the value as provided in section 14. Thus again clearly indicating that the assessment must be made in the name of the owner. We may pass from this section to section 40, which provides that the taxes imposed by this law shall be a preferred lien from the first day of May of each year, upon all real estate of the person assessed, situate in the county in which the assessment is made. Could taxes assessed upon property belonging to, or supposed to belong to Ogden, Hadley and Ludlow, constitute a lien upon property belonging to a different person unknown to the assessment roll? This section is but in harmony with the others, and contemplates an assessment in the name of the owner at the time. Section 59, requires the collector upon making a sale of land, to include in one deed all the lands sold as the property of the same individual, to one person on the same day. He can only know from the assessment list who is the owner of the land, and is of course governed by it in making the deed. If the assessment shows the land to be the land of Ogden, Hadley and Ludlow, it is sold as their property, and the deed conveys to the purchaser their title, which is, as to them, good and valid, unless for good reasons successfully assailed. But it cannot pass the title

of another person, for the reason already stated, that he was not charged with the taxes, or adjudged a delinquent in their payment. Both the charge and the delinquency attached to Ogden and others, and it was in virtue of these matters, and these matters alone, the charge against and delinquency of these persons, that the collector was invested with authority to make the sale. The assessor ascertains and reports the person chargeable with the tax, and the collector in turn pronounces at the proper time his judgment, by declaring that such person is legally in default in performing his duty to the government, and in consequence of such default, the collector in virtue of the authority vested in him by the law, proceeds to sell the land upon which the tax has been assessed, as shown by the assessment.

While we are of opinion that the court should have admitted the deed, under the rule that the party was not limited as to the order in which he should introduce his evidence, yet as the party did not intimate that he intended to introduce other evidence, either showing a title in the defendant or an outstanding title in another person, and as it is the action of the court in overruling the motion for a new trial which is complained of, we do not feel authorized in reversing the judgment for this alleged error, when it is not shown, or believed a different result would follow another trial.

Judgment affirmed.

HANDY, J., dissented from the opinion of the majority of the court, as follows:

Being unable to concur in the view of this case taken by a majority of the court, I proceed to state very briefly the reasons for my dissent.

The question involved in the case is, whether an assessment of land for state and county taxes, in all respects regular, except that it is assessed as the property of a person who is not really the owner, is legal and valid, and a sale made under such assessment for unpaid taxes, is regular and valid.

The opinion of the majority of the court, as I understand it, proceeds upon the idea that under our laws, the assessment must

be made against the owner, and not the property; or that it is the owner, and not the property, who is primarily liable to the payment of taxes.

On the contrary, I think that it is the property, and not the owner, that is assessed. *Assessment is a valuation put upon property* subject to taxation, and for which the property is bound, in consideration of the protection given by government to the property in the hands of its proprietors. It is true, that that protection operates to the benefit of the owner, but it is originally and directly the protection of the thing and not of the person. The person is only protected because he is interested in the thing. The *property* is *assessed* or valued, and charged with the payment of the sum taxed upon it, as a compensation for the protection afforded to it by the State. If the taxes be not paid, what is the remedy? It cannot be pretended that there is any personal indebtedness on that account, against the owner or person assessed, for which he could be sued and the money recovered. But the only remedy is by *distress* and sale of the thing assessed. It is purely a remedy against the thing, which, although it affects the person, is no more a proceeding *in personam*, than an assessment is a matter pertaining to the person of the owner. And but for the provisions of the statute that all the property in a county, with which any party might be assessed, should be liable to the payment of any taxes assessed against his property, each specific piece of property which is separately assessed, would be liable only for the taxes assessed against it.

This general principle applicable to the assessment and taxation, is not, in my opinion, changed by anything in the Act of 1846, under which this assessment was made; but on the contrary, I think that the various provisions of the act show, that the legislature intended that the *property* should be assessed; that the charge for the payment of taxes should be upon the property, and that the mode of collecting taxes in case the owner of the property should fail to come forward and discharge the claim which bound the property, was by proceeding against the property.

The first section provides that the property shall be taxed. The

fourth provides how the tax assessors shall assess the poll, and all the real and personal property subject to taxation.

The fifth section makes it the duty of the assessor to call upon each taxable inhabitant for a list of his property and its value, and in case of failure of the inhabitant to deliver such list, it is made the duty of the assessor to make out the list.

The 14th section provides, that all lands subject to taxation, not assessed and given in by the owner, shall be valued by the assessors, according to their intrinsic value.

The 17th section requires the assessors to make a personal examination of lands, in order to determine their value, if practicable, and if not, to determine their value from the best sources of information within their power.

The 35th section provides, that the tax-collectors shall give general notice that they will attend at stated times and places, for the purpose of collecting and receiving taxes; and it shall be the duty of each one liable to pay taxes, to pay over to the tax-collector the amount of taxes due on the property assessed and belonging to him; and on failure, the tax-collector is authorized to distrain the property and collect the taxes due.

The 26th section provides for the sale of lands upon which taxes are due and unpaid, and the tax-collector is merely required to give general notice that he will, on the day specified, "proceed to sell all the lands upon which taxes are not paid."

These and other provisions of the act show, that the tax is intended to be a specific charge upon the land itself; that it is the duty of the assessor to obtain from the owner a list of his taxable property, if an inhabitant of the county, or he has an agent who can furnish it; otherwise, that lands shall be valued by the assessor, and that it is the duty of every owner of property, upon general notice given, to come forward and pay the taxes; and upon failure to do so, that the property may be distrained and sold.

An opportunity is afforded to every proprietor to come forward and discharge the tax upon his property. The notice given in order to obtain payment of the taxes, is the most general, and is founded on the just presumption that every man knows his own

property which is subject to taxation, and will readily come forward and discharge the taxes. If his property is placed on the assessment list in the name of another person, or omitted entirely, it is, nevertheless, the dictate, both of prudence and honesty, for him to discharge the taxes.

The property is charged with a tax. The owner has the privilege of discharging it; and if he fails to do so, upon the general notice given to all proprietors to pay the taxes assessed on their property, he certainly has no cause of complaint that the demands of the law have been enforced against his property.

Cases may frequently occur where land, which is subject to taxation, is in the possession of no one, and where the assessor may be unable correctly to ascertain in whom the title is. This may frequently occur, as in cases like the present, where land is owned by a non-resident of the State, and such land may not be in the possession of any one. What course is to be pursued by the assessor in such cases? Under the rule held by a majority of the court, he is bound to assess the land in the name of some one, and if he mistakes the owner, and assesses it as the property of a person not entitled to it in law, the assessment is void, no taxes can be collected upon it, and it cannot be sold for taxes. And so of every other case; if the assessor is compelled to assess all property in the names of the persons legally entitled to it, and, upon his falling into an error in regard to the legal title to property, if his assessment is void, the most serious embarrassments may arise to the revenues of the State and of the counties, by the want of legal knowledge in the tax-assessors, enabling them to settle correctly the most complicated questions of legal title that are so often the subjects of doubt and difficulty with learned lawyers and our ablest judges. If the statute intended to *require that* lands should be assessed in the name of the legal owner, and that that was a condition precedent to the validity of the assessment, then indeed the revenues of the State and of the counties stand upon a most uncertain and unreliable foundation. Considering the disastrous consequences that would result from errors of judgment as to the real owners of property, under the view taken of the subject by the majority of the court, it is not to be supposed, if the legislature

had intended to impose so difficult and important a duty upon tax-assessors, but that it would have been done in clear and unmistakable terms, and that provision would have been made to insure the proper performance of the duty, and to save the public interest from the ruinous consequences of errors of judgment on the part of officers but little qualified to determine questions of so much moment.

These difficulties are all avoided by a recurrence to the true principles governing the subject of the imposition and collection of taxes; which is, that it is *the thing,* and *not the person,* that is assessed—*valued*—that the tax is *a charge* upon *the property,* which the owner may, and is bound to, come forward and discharge, but which is nevertheless not a personal demand against him, and if he does not see fit to come forward and relieve his property from the charge for which it is specifically bound to government, the thing is distrained and sold. It appears to me plain, that government deals with the property which it protects for the benefit of the owner, directly and primarily; and although the duty of paying the taxes assessed on his property devolves upon the citizen, yet it is for the public convenience, as well as the protection of property to the owner, that this is allowed, and not because it is a personal demand against the owner.