# WYNNE ᴀɴᴅ WIFE *vs.* WALTHALL.

[BILL IN EQUITY FOR CONSTRUCTION OF WILL.]

| 37 | 37 |
|---|---|
| 116 | 271 |

| 37 | 37 |
|---|---|
| 127 | 201 |

1. *General rules of construction.*—In the construction of wills, all the parts are to be construed in relation to each other, so as to form, if possible, one consistent whole; and though the former of two inconsistent clauses must yield to the latter, yet this rule is only applicable after the failure of every attempt to give to both such a construction as will render them equally effective.

2. *Bequest construed to vest in children equal interest with widow in annual increase of property.*—Testator, by the first clause of his will, directed that all his property, both real and personal, should be equally divided among his wife and three children, share and share alike; and that his entire estate should be kept together and managed by his executors, (who were also appointed guardians of his children,) until his eldest child, a son, should attain his majority, when his share was to be set apart to him; the share of each daughter to be allotted to her when she attained the age of twenty-one years, or married before that time with the consent of her guardians. The second clause was: in these words: " It is my will and desire that, after all my just debts' and liabilities shall have been paid, the said executors and guardians' of my children shall pay over to my said wife, from to time, as she may call for the same, such portion or part of the annual increase or profits of all of my said property as she may desire; the remainder to be by them invested for the benefit of my said wife and children." The fourth clause directed his executors to sell a certain town lot, to purchase another suitable lot in the same village, and to have erected' thereon a dwelling-house, "for the residence and benefit of my [his] said wife, after such plan, and in such style as she may desire and direct." The third clause directed the sale of the plantation on which he resided, and the fifth and sixth clauses a sale of certain personal property; while the seventh clause provided, that if the widow or any one of the children should die before the allotment to the latter of their respective shares, the survivors should take the interest of the deceased; and that if all the children should die before their respective shares had been allotted to them, then the widow should "have the proceeds and profits of all the property during her life." *Held*, that while the widow was entitled, under the second clause, to demand and receive from the executors the entire annual profits of the property after the payment of the testator's debts, she had no right to use them for the purpose of investment, or for her own exclusive benefit in any other manner: that the children took an equal interest with her in such profits, and were entitled to be maintained and educated by her out of such profits; and that, while she had a right to use and enjoy, in common with the children, the house and lot purchased, by the executors under the fourth clause, the house and lot were the.

property of the estate, and subject to distribution under the first clause.

APPEAL from the Chancery Court of Greene.
Heard before the Hon. JAMES B. CLARK.

THE bill in this case was filed for the purpose of obtaining a judicial construction of the will of Robert K. Walthall, deceased, which was in the following words :

"It is my will and desire, that all my property, both real and personal, shall be equally divided between my beloved wife, Margaret, and my three children, share and share alike; that is to say, my wife shall have one share, and each of my children one share of said property, to be kept together, managed and controlled by my executors and the guardians of my children, hereinafter appointed, until the oldest of my children shall arrive at the age of twenty-one years; at which time, his share shall be set apart in a manner that shall be just and equitable, and conveyed to him; and in like manner, when the next oldest, Sallie Miranda, shall arrive at the age of twenty-one years, or if she should marry at an earlier age, with the approval and consent of her guardian, then shall her share be set apart and conveyed to her ; and in like manner, the youngest, when she shall arrive at the age of twenty-one years, or if she should marry at an earlier age, with the like approval and consent of her guardian, then shall her share be set apart and conveyed to her.

"*Item*, it is my will and desire that, after all my just debts and liabilities shall have been paid, the said executors and guardians of my children shall pay over to my said wife, from time to time, as she may call for the same, such portion or part of the annual increase or profits of all my said property as she may desire; the remainder to be by them invested for the benefit of my said wife and children.

"*Item*, it is my will and desire, that the tract of land on which I reside, called the 'home tract,'" (particularly describing it,) "shall, on the first day of January, 1853, be sold to L.

N. Walthall, and a fee-simple conveyance [be made] to him and his heirs forever, free from any incumbrance of dower or otherwise, (provided the said L. N. Walthall desires to purchase the same,) at the price of twelve dollars and a half per acre; and in the event the said L. N. Walthall shall not desire to purchase the said land at the price mentioned, then it is my will, that the said lands shall be sold at public outcry to the highest bidder, on the first day of January, 1853.

"*Item*, it is my will and desire, that my said executors shall sell, at private or at public sale, for cash or on time, as to them shall seem best, the lot or parcel of land situated in the village of Newbern, in Greene county, purchased by me from Thomas R. Borden, esq., and shall purchase in said village another suitable lot, and shall, prior to the first day of January, 1853, erect, or cause to be erected thereon, a dwelling-house for the residence and benefit of my said wife, after such plan, and in such style as my said wife shall desire and direct.

"*Item*, it is my will and desire, that my said executors shall sell, at an early convenient day, my riding-horse, at private or public sale, for cash or on time, as to them may seem best.

"*Item*, it is my will and desire, that such of my small mule-colts, and old mules unfit for use, as my said executors may think it advisable to sell, together with all my brood-mares and horses, shall be sold at public outcry to the highest bidder, on the first day of January, 1853, except one horse called *Collum*, one bay mare, called *Biddy*, and the colt of the *Irwin* mare.

"*Item*, it is my will and desire that, in case of the death of my wife, or of either of my children, before said children shall arrive at the age of twenty-one years, or the marriage of either of my daughters, then the survivors shall have the share that would have been allotted to the deceased; and in the event of the death of all my children before they shall arrive at the age of twenty-one years, or the marriage of my daughters, my wife surviving, then my said wife

shall have the proceeds and profits of all the property during her life ; and at her death, all my said property shall be divided equally between my brothers and sisters as may be living, and the children of those that may be dead, except such property as I have acquired, or may acquire, in right of my wife : the property thus acquired, in right of my wife, in the event last above mentioned, shall descend to the heirs of my said wife, in the same manner as if she had never been married.

" *Item*, it is my will and desire, and I hereby nominate and appoint my trusty friends and beloved brothers, John M. and Thomas M. Walthall, executors to execute this my last will and testament, and the guardians of my children during their minority."

The testator died in Perry county, Alabama, the place of his residence, in September, 1851. His will was admitted to probate, and letters testamentary thereon granted to Thomas M. Walthall, one of the executors therein named, in November, 1851. The personal property of the estate was appraised at about $50,000 ; the value of the lands is nowhere stated in the record. In March, 1859, the executor resigned; and the widow having in the meantime married P. C. Wynne, letters of administration *de bonis non*, with the will annexed, were then granted to her and her husband. The bill was filed in June, 1859, by Mr. and Mrs. Wynne, against the two surviving children, (the youngest having previously died,) and their guardian. The children were described in the bill as infants under the age of fourteen years. Answers were filed by the defendants, submitting to the jurisdiction of the court, and insisting on that construction of the will which was most favorable to the interests of the children.

On final hearing, on bill, answers, and exhibits, the chancellor held, that Mrs. Wynne took an equal interest with her children, and no more, both in the annual increase of the property after the payment of debts, and in the house and lot purchased by the executor under the fourth clause ;

and that, while she was entitled to receive and retain the entire annual profits, she could not invest any portion thereof in property, or otherwise use the same for her own exclusive benefit, but could only expend it in the support of herself and the maintenance and education of her children.

From this decree the complainants appeal, and here insist that the chancellor erred in restricting Mrs. Wynne's use and enjoyment of the property to the purposes above specified, and in holding that the children took an equal interest with her under the second and fourth clauses; while the defendants, under cross-assignments of error by consent, contend that he should have restricted her, under the second clause, to such portion of the annual profits as might be reasonably necessary for her own support, and for the education and maintenance of the children.

BROOKS & GARROTT, for the complainants.

D. W. BAINE, and W. P. WEBB, for the defendants.

A. J. WALKER, C. J.—The prime object of search in the construction of wills, is the testator's intention, which, if legal, is the law of the instrument. To assist in ascertaining the intention, various rules have been framed, one of which, being a suggestion of the plainest common sense, is, "that all the parts are to be construed in relation to each other, and so as, if possible, to form one consistent whole."—2 Jar. on Wills, 741, § 7. The import of other parts of the will, in this case, touching the same subject with the second clause, must be determined, in order that we may find, if possible, a construction which will give harmonious operation to each.

The first is, obviously, the leading and main clause of the will, to which all the others are rather supplementary, adding those more minute directions, which, on account of its comprehensiveness, could not be embraced in it. The first expresses the general testamentary purpose and plan. The others were designed, not materially to vary that plan,

but to adapt the process of executing the will to the condition of the family ; to give specific directions as to particulars necessarily omitted in the generality of the first clause, and to anticipate contingencies of death in the family. This general view of the instrument, drawn from a careful reading and comparison of all its parts, will assist in the comprehension of any clause of doubtful construction.

The first clause makes a sweeping bequest of all the testator's property, real and personal, to be equally divided, "share and share alike," between his wife and children ; directs that it shall be kept together and managed by the executors, and that the shares of his children shall be set apart to them—the son's, when he attains majority, and the daughters', when they attain majority, or marry with the consent of their guardians. This clause, while it postpones the time of reception, unquestionably gives an equal vested interest to each one of the testator's family in his entire property, and, of course, in the subsequently accruing profits thereof, unless it is controlled by other parts of the will.— *Cox v. McKinney*, 32 Ala. 461 ; *High v. Worley*, *ib.* 709 ; *Thrasher v. Ingram*, *ib.* 645 ; *Stearns v. Weathers*, 30 Ala. 712 ; *Savage v. Benham*, 17 Ala. 119.

If the second clause receive such construction as to bestow upon the widow as much as she desires of the profits of the estate, for her exclusive use, it infringes the first clause, and, in part, abrogates it; for the first clause clearly disposes of all the testator's property in terms comprehending the income as well as the *corpus*, and requires perfect equality in the division of the entire property between the wife and children. The children were all of tender years at the testator's death ; and the payments to the widow, under the second clause, must necessarily be continued through a long period of time. If the widow, during that period, after the payment of the debts, is to receive, at her option, the entire income of the estate, (which, in the interim, may duplicate itself,) in exclusion of her children, the entire spirit and intent of the first clause may be defeated, and the widow may stand, at the time of the

division, the recipient of more than double as much as the children, whom the testator designed to favor equally with herself in the bestowment of his bounty.

Certainly, the first clause must yield to the second, if the conflict between them is irreconcilable. But the rule which sacrifices the former of two contradictory clauses, is only applied after the failure of every other attempt to give to both such a construction as will render them equally effective.—*Pace v. Bonner,* 27 Ala. 307; *Miller v. Flournoy,* 26 Ala. 724; *Thrasher v. Ingram,* 32 Ala. 645–660; 1 Jar. on Wills, 416; 2 *ib.* 741. We are to inquire, therefore, whether there is a possible harmonious construction for the two.

The first clause, as we have seen, on account of the generality of its scope, necessarily omitted the adaptation of the process of executing the will to the condition of the testator's family. It made no provision for the maintenance of the widow, or for the support and education of the children, still in infant helplessness, during the protracted period antecedent to the division of the estate. The preservation of the family relation was so obvious, natural, and necessary a result of its condition, that an express provision upon the subject was not required; and the will must have been framed in reference to such result. That it was anticipated by the testator, is indicated in the direction of the fourth clause, for the purchase of a lot in the village of Newbern, and the erection upon it of a suitable house for the residence of the wife. It cannot be supposed, that the testator intended a residence procured by the executors at the expense of an estate conveyed by a previous clause to the wife and children in equal shares, should be occupied by the wife alone, without the children, whose tender years made them necessary subjects of maternal care. How was it designed that this family of widow and children should be maintained after the discharge of the debts of the estate? The executors could not, consistently with the will, maintain them, either out of the income of the estate, or the *corpus* of the property; for in the second clause there is an unmis-

takable direction, that so much of the income as the widow may leave shall be invested, and the property itself is required to be kept together and divided at the appointed time. The widow has certainly the means of maintaining herself out of the profits from which she is authorized to draw by the second clause; but how are the children to be maintained and educated? It is impossible that the family should be kept together, in a common residence, and that the widow should maintain herself from the payments to her out of the income, without a participation by the children. The will in its operation, therefore, necessarily leads to the maintenance of the children out of the fund drawn by the widow from the profits of the estate. This result, so obvious, must have been intended. It is inconceivable, that the testator, having in the second clause directed his attention to the operation of his will upon his family before they could receive their respective shares, should have had regard to his wife alone, and intentionally left his children without a maintenance; and yet he has done that unnatural thing, if the children are not to be maintained out of the profits drawn by the widow; for he follows up the bequest out of the income in favor of the widow, with the direction for the investment of the residue.

For reasons similar to those from which we deduce the children's right to a maintenance out of the income received by the widow, we decide, that she must be restricted as to the purpose for which she may draw upon the income. The executors must pay over to her as she may desire; but the payments must be for the purpose, and as the means of maintaining herself, and maintaining and educating the children. If the widow is allowed to take the whole of the income, whether desired for those purposes or not, the spirit of equality as between herself and children, which pervades the will, is disregarded; the equality of right declared by the first clause is infringed; the widow, at the time appointed for the division, will receive her share accumulated from the income of the common property of herself and the children, and there will be no remainder of the

income to be invested, as contemplated by the last clause of the second item.

If the second clause be so construed as to give to the widow a right to take the profits to the extent of her desire, for the purpose of maintaining herself, and maintaining and educating her children, it merely modifies the operation of the first clause to suit the necessities and condition of the family before the division. Such was the effect which the testator designed it should have. He intended that the widow, in whom he confided, should, without stint or question, draw from the profits for the purposes above stated, and that she should thus be saved from the annoyance and humiliation of having the means of maintaining herself and children measured out to her according to legal rules. He thus provided an equality of benefit for wife and children, consistent with the first clause, and with the spirit of the will, but dispensed with niceness in its adjustment.

In attaining this construction of the second clause, we do not vary the meaning of any of its words. We leave untouched the direction *to pay over* to the widow, from time to time, as she may require, such part of the annual profits as she may desire. We only declare the purpose for which those payments are to be made. In doing this, we are justified by the rules already stated, and by the rule which requires that words should be supplied in order to effectuate the intention.—*Capel v. McMillan*, 8 Porter, 197; 1 Jar. on Wills, 427–437; 2 Wms. on Ex. 932, n. 1.

In the cases of *Kerr v. Hill*, (2 Des. Eq. 279,) and *Crane v. Vanduyne*, (1 Stockton's Ch. 259,) a question of construction arose, which was almost identical with that which arises in this case as to the maintenance of the children; and the decision was the same which we make in this case. See, also, *McLeod v. McDonnell*, 6 Ala. 238; *Fitzgerald v. Jones*, 1 Munf. 150.

For reasons which have been already indicated, we construe the fourth clause as investing the widow with the right to use the lot bought and dwelling-house built thereon in pursuance of that clause, and the children have the right

to share with her its enjoyment; but the house and lot are the property of the estate, subject to distribution under the first clause.

The decree of the chancellor is affirmed.