[Mims, et al. v. Davis, et al.]

# Mims, *et al. v.* Davis, *et al.*

### Bill to Construe Will.

(Decided June 8, 1916.   72 South. 344.)

1. **Wills; Instruction; Power of Disposition.**—Where the will devised the entire estate to the wife of the testator, and provided that she might use the property in any manner deemed best by her for her support, and that at her death, all the property possessed by her should become the property of their daughters, to be used for their support during their lifetime, and at their death, all property left by them to revert to their heirs at law, the will gave the wife an estate for life, with absolute power of disposition, and whatever might remain undisposed of at the death of the wife to go to the daughters for their lives to the exclusion of all other descendants.

2. **Life Estate; Enlargement by Sale.**—By § 3423, Code 1907, a purchaser from a life tenant who held under the will the vested right of absolute disposition, took a fee.

APPEAL from Autauga Chancery Court.

Heard before Hon. W. W. PEARSON.

Bill by Amanda Jane Mims and another against W. D. Davis and others, to construe the will of Shadrach Mims, and for other purposes.   From a decree sustaining demurrers to the bill complainant appeals.   Affirmed.

THOMAS & WILEY, for appellant.   RUSHTON, WILLIAMS & CRENSHAW, for appellee.

SAYRE, J.—The last will and testament of Shadrack Mims provided as follows:

"I give, devise and bequeath my entire estate and property, real and personal, to my wife Elizabeth, described as follows: (describing it).   It is also my will and wish that my wife Elizabeth use the property by me given, devised and bequeathed in any manner by her deemed best for her support.   It is my will and wish that at the death of my wife Elizabeth, all property possessed by her will become the property of our daughters Amanda Jane and Maria Cook, to be used by them for their support during their lifetime, and at their death all property left by them will revert to their heirs at law.   It is also my will and wish that my wife Elizabeth after my death set apart a lot or parcel of land

containing 80 acres the same to be deeded to the children of our deceased son, Alexander D. Mims.

Shadrack died in 1885, and in 1888 his widow, Elizabeth, executed to E. M. Davis a deed of a part of the land described in the will. In 1895 Elizabeth died. This bill is filed by Amanda and Maria Cook, named in the will, against the heirs at law of Davis, deceased, and seeks to have the will aforesaid construed as vesting only a life estate in Elizabeth Mims, with remainder to complainants, and an accounting of rents and profits.

(1) Our duty and purpose is to ascertain the intention of the testator and give effect to it so far as consistent with established rules of law. This will is expressed in the common language of the laity, and, so far as a discovery of its intention is concerned, we can have no better guide than common sense and native reason as applied to the language used and circumstances in which it was expected to operate. Testator left descendants other than complainants. The will shows a provision for the children of a deceased son. Mrs. Davis, the wife of Davis to whom the deed of the land in controversy was afterwards made, was his daughter. But complainants were afflicted and infirm. They have been "practically deaf and dumb" from infancy. One of them is now a married woman, but testator could hardly have anticipated their separate settlement in life in that way. Of these facts, dehors the will, we are informed only by the averments of the bill of complaint, it is true; but they indicate the probability of a general purpose so closely in accord with the arrangement brought into view by the language of the bill that we are willing to proceed to a construction of the will upon the assumption of their existence as alleged. We assume, then, that testator in the preparation of his will took thought of a situation in which especial care for his afflicted daughters would be a charge upon their mother as long as she lived.

Complainants insist that Elizabeth Mims could convey to Davis an estate for her life only. It will be noticed that the first clause of the will, standing alone, would vest a fee in testator's wife. But the instrument upon the whole, and agreeably with what might be naturally expected in the circumstances, discloses a purpose to make provision for the children named as well as the wife. Unquestionably the testator intended to make a present provision for his wife, relying no doubt upon her affection for their afflicted children as a sufficient safeguard of their welfare

during her life, and a further provision for them after her death. In the succeeding clause it was provided, as shown above, that at the death of his wife, Elizabeth, all property possessed by her should become the property of complainants, to be used by them for their support during their lifetime, thus by the latest expression of testator's will cutting down the fee previously devised and providing an estate in remainder to complainants.

But the remainder limited over was not necessarily intended to be of the entire estate or wholly independent of intervening disposition by the life tenant. It was limited to all property possessed by the wife at her death. It cannot be supposed that testator was thus undertaking to dispose of property that his widow may have acquired from other sources. The only reasonable inference, since he had no right to dispose of property other than his own, is that at this point he was dealing with that part of the property passing under his will which should remain undisposed of by the widow at her death. The natural and reasonable implication from the language employed and the circumstances in which it was to operate is that the wife should have a power of disposition. For this interpretation the prevailing opinion in *Flinn v. Davis*, 18 Ala. 132, 158, is an authority in point.

Interposed between the devise to the wife and the words making specific provision in remainder for complainants was this language: "It is also my will and wish that my wife Elizabeth use the property by me given, devised and bequeathed in any manner by her deemed best for her support."

In the technical language of the law, it must be conceded, the right to the use of the property does not ordinarily imply the absolute power of alienation, since, strictly speaking, the use of a thing is not the thing itself, but is the enjoyment of its proceeds or profits. But in common parlance to sell property is to make a use of it, is to utilize it, and this will empowered the wife to use the property in any manner by her deemed best for her support, intending, no doubt, though no trust estate was created, though no separation between the legal and beneficial ownershiw was expressed, that she should do with the property whatever seemed best for herself and her children, who, as the bill shows, were dependent upon her in a peculiar manner.—*Wynne v. Walthall*, 37 Ala. 37. In much the same language, demonstrating the sense in which he employed the term "use," he then further provided that all property possessed by his wife at her death should be used by

[Mims, et al. v. Davis, et al.]

complainants for their support during their limetime, and that
all property left by them at their death, that is, the residuum of
unused, meaning necessarily, undisposed of, property should go
to their heirs at law.  So, in our judgment, testator intended to
clothe his wife with an absolute power of disposition and to pro--
vide that the residue remaining undisposed of at her death, what-
ever that might be, should go to complainants for their life in
exclusion of his other descendants.   This conclusion determines.
the result 'in this case.

If the remainder thus limited over to complainants is wholly
incompatible with the previous devise to Elizabeth Mims or is
void for uncertainty—as one paragraph of the opinion by Chief
Justice MARSHALL seems to intimate in respect to the similar
provisions of the will considered in Smith v. Bell, 6 Pet. 68, 8 L.
Ed. 322, cited here by complainants—then it may be that at the
common law the will vested the entire fee in the first taker.  How--
ever, it was said in the case just alluded to that the limitation
over after a life estate, with a power of absolute disposition, re-
strained and confined the power to such disposition as might be
made by a person having only a life estate.  But in that case the-
life tenant had made no conveyance, and the specific question
presented was, not whether the life tenant could by conveyance-
cut off the remainder, but whether the testator intended to create
a remainder.

(2)  Whatever may have been the effect at the common law of
such incompatible provisions in disposing of land by deed or will,
cases of the sort are now governed by the statute (section 1325
of the Code of 1852; section 3423 of the Code of 1907) the effect
of which was thus stated in Alford v. Alford, 56 Ala. 350:

"Whatever doubts may have been entertained of the correct
rulings of this court, heretofore made, on the question we are con-
sidering, those doubts are resolved by the statute,  *   *   *   so-
far as that statute extends.   Where a life estate is created, and:
an absolute power of disposition conferred on the life tenant, this.
enlarges the life estate into a fee; not absolutely, but in favor, and
only in favor, of the creditors of, and purchasers from, the life-
tenant.   But while the estate is thus enlarged in favor of credi--
tors and purchasers, the same statute declares that, in case the
power is not executed, nor the lands sold for the satisfaction of'
debts, during the continuance of the particular estate, the prop-
erty remains subject to any future estate limited thereon."

[Mims, et al. v. Davis, et al.]

See, also, other cases cited in the annotation to section 3423 of the present Code. Defendants in the case before us claim under a purchaser from the life tenant in whom, as we conclude upon a fair construction, was vested the right of absolute disposition. There is therefore no occasion to further consider the cases cited by complainants from the reports of the Supreme Court of the United States.

As for our own cases cited by complainant: In *Weathers v. Patterson*, 30 Ala. 404, as in *Smith v. Bell, supra,* the contest, involving personal property, was between the remainderman and a surviving subsequent marital right. The testator in that case had given his wife personal property, including a slave, for her life, adding this provision: "And at her death, whatever of my said estate, so bequeathed as aforesaid, as may remain and be in her possession at her death, it is my will and testament, and I do hereby give and bequeath the same to her son, Hansford C. Patterson, to him and his heirs forever."

The life tenant married again. The last husband had sold the slave and with the proceeds had bought other slaves, and the right to them, along with the other property bequeathed, was in dispute between Patterson and the last husband, who survived the life tenant and was claiming in his marital right. There was no question between the remainderman and a purchaser from the life tenant. The point of the decision was that there was a valid remainder created by the will. The court referred to *Denson v. Mitchell*, 26 Ala. 360, in which it was said that the authorities, both English and American, were generally agreed that an express estate for life, given by will (that, however, is not precisely this case, for here a fee is cut down by implication) negatives the intention to give the absolute property, and converts words conferring a right of disposition into words of mere power. The question there, as it is here, was merely one of testamentary intention, and we see no reason whatever for doubting the decision. Here the land in dispute has been sold by the life tenant, and the only question presented is whether she had the power to sell. We have stated our conclusion, drawn from the language creating the life estate and as well from other corroborative provisions of the will and the circumstances in which it was to operate, that the tenant for life did have the power of alienation.

Complainants rely also upon *Pendley v. Madison*, 83 Ala. 484, 3 South. 618, which was an action of ejectment. In that case the

will equivocally gave to defendant's vendor an estate for life only in real and personal property. It provided in the next place that all of testator's property, "both real and personal, that shall remain over, and shall not have been used up by her, or be dead or destroyed" at the death of the tenant for life, should go to his heirs according to their legal rights under the laws of Alabama. It seemse entirely clear, as to the land at least, that the language we have quoted conferred upon the tenant for life no power of disposition; and the court so held, citing *Weathers v. Patterson* and *Denson v. Mitchell.*

The decree of the judge of the Fifteenth circuit, sitting in equity, is affirmed.

ANDERSON, C. J., and McCLELLAN and GARDNER, JJ., concur.