(79 South. 644)

GUNTER v. TOWNSEND et al. (3 Div. 289.)

(Supreme Court of Alabama. March 23, 1918. Rehearing Denied May 9, 1918.)

1. TAXATION ☞730—TAX SALE—INTEREST OF PURCHASER—STATUTE.

Under Code 1907, § 2296, providing that after two years from the date of the sale of any realty for taxes the judge of probate must execute and deliver to the purchaser a deed to each lot of realty sold and remaining unredeemed, which deed shall convey and vest in the grantee all the right, title, and interest of the person whose duty it was to pay the taxes on such realty and the lien and claim of the state and county thereto, but shall not convey the right, title, or interest of any reversioner or remainderman, the purchaser takes only the interest of the one in whose name the property was assessed, such as a life tenant, etc., and does not take the interest of any reversioner or remainderman.

2. MUNICIPAL CORPORATIONS ☞980(1)—TAX SALE—MUNICIPAL TAXES—INTEREST OF PURCHASER—STATUTE.

Under Code 1907, § 1311, authorizing cities and towns to levy taxes upon property, section 1313, giving to a valid assessment the effect of a judgment against the property or the owner enforceable after delinquency by an execution levied against the owner or against the property, section 1314, giving a municipality a lien for taxes superior to all liens, section 1315, relating to purchaser's title, sections 1319, 1320, providing that on delinquency a certified will shall be made out describing each piece of property separately with the name of the owner, if known, and the amount of taxes due by such owner upon personal property, which may be collected by sale of the realty as for taxes due thereon, which shall be executed by the sheriff, section 1322, providing for a decree and sale, and section 1326, providing that the lien of the city shall pass to the purchaser to be enforced by him in a court of equity, the title of a reversioner or remainderman is not subject to sale for the payment of the property taxes of a life tenant or those having a limited present estate in the property for if it can be done, such statutes should be so construed as to make it impossible for a man to lose or forfeit his lands without ever having had the opportunity of testing, by suit, the legality of the proceedings by which it is proposed to divest him of his freehold.

3. WILLS ☞697(1) — CONSTRUCTION — RIGHT OF ACTION—REMAINDERMAN.

A remainderman or beneficiary of a trust, seeking to maintain a bill to protect the property, should at least have a vested interest in the trust fund, though the right of enjoyment is postponed, and a contingent remainderman would not be a proper party plaintiff in suit affecting a present ownership of the property.

4. WILLS ☞697(3) — ACTION FOR CONSTRUCTION—PARTIES.

A suit for the construction of a will may sometimes be brought by an executor or testamentary trustee to protect themselves and to have proper instructions as to the execution of the trust.

5. WILLS ☞471 — CONSTRUCTION—INTENT OF TESTATOR.

The general and primary interest of the testator evidenced by the whole will must be given effect over any apparent repugnancy that may tend to be disclosed by a special or secondary interest to the contrary.

6. WILLS ☞471 — CONSTRUCTION—CONFLICT BETWEEN ITEMS.

If there is an irreconcilable conflict between two items of a will, the latter must prevail, when its provision is consonant with the general or primary intent of the testator, and consistent with his general scheme exhibited by the whole will.

7. WILLS ☞616(1) — CONSTRUCTION—ESTATE FOR LIFE.

The express bequest of an estate for life negatives the intent to give the entire fee, converting a superadded right of disposition into a mere power, and denying the right of property therein.

8. WILLS ☞455—CONSTRUCTION.

The court must give the words in the will the construction placed thereon by the testator in the context in which he uses it, having due regard for the general scheme of the testator in the will.

9. WILLS ☞682(2)—CONSTRUCTION—LIFE ESTATE.

Testatrix devised the sum of $4,000 in trust for her son to be invested the same as other property given them in trust for the son, and provided that the residue should go share and share alike to her three children and to the son through the trustees, and required the trustees to invest with the principal and rent out the real estate and to pay over the net proceeds and rents to the son, and permitted the trustees to use the trust fund in case of the son's serious illness, etc., and provided if he died without children the residue of the trust should go equally to testatrix's children, or their children taking in the right of any deceased parent, and that if the son died leaving children the trust property should be conveyed to them equally, and that if any of testatrix's children died without leaving children the part of her estate devised to such child should be divided equally among her surviving children or their children, the interest of the son to vest in his trustees. *Held*, that the son took only a life estate with remainders over.

10. MUNICIPAL CORPORATIONS ☞982 — TAX TITLE—BILL—EVIDENCE.

In a bill under Code 1907, § 2311, by the purchaser of a tax title, a deed of the register in chancery executed pursuant to a sale for municipal taxes was admissible; proof thereof not being dispensed with by recitals in the register's deed.

11. MUNICIPAL CORPORATIONS ☞982 — TAX DEED—EVIDENCE AS TO REGULARITY OF PROCEEDINGS.

Code 1907, § 2297, giving to tax deeds under sales for state and county taxes the effect of prima facie evidence as to the regularity of all proceedings subsequent to the judgment of the probate court recited therein, does not extend such probative effect to a register's deed pursuant to a sale for municipal taxes.

12. TAXATION ☞789(4)—TAX TITLE—ACTION—BURDEN OF PROOF.

Where complainant, claiming under tax deeds executed upon a sale of land for nonpayment of state and county taxes, introduced tax deeds from the judge of probate and from the register, and the answer denied that the tax sales had been made as required by law and alleged that they were void, the burden was on complainant to establish his title by showing by other evidence a compliance with Code 1907, §§ 2296, 2297, relating to the effect of deeds as evidence and to form of deeds.

13. TAXATION ☞788(3) — TAX TITLE—REGULARITY OF TAX DEED—STATUTES.

Under Code 1907, § 2297, making tax deeds prima facie evidence of the regularity of the proceedings subsequent to the judgment recited therein, in any suit involving the rights of the purchaser, the purchaser under the tax sale has the burden of showing compliance with all statutory requirements as to such sales preceding the judgment.

───────────────

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**14. TAXATION ⊙⇒734(1)—TAX SALES—VALIDITY—STATUTE.**

Tax sales, unless made in strict compliance with statutory requirements, are void.

**15. TAXATION ⊙⇒658(3)—TAX SALES—VALIDITY—NOTICE.**

In view of Code 1907, §§ 2269, 2271, 2272, and 2278, due notice is essential to the validity of a tax sale, and notice to a life tenant, or to his trustee, will not bind the reversioner or remainderman without notice of an intended tax sale.

Appeal from Circuit Court, Montgomery County; E. R. Beckwith, Special Judge.

Bill in equity to remove cloud from title by Charles P. Gunter against George W. Townsend, Josie Walker, and Sadie Shelton and others. Decree for respondents Walker and Shelton, and complainant appeals. Decree affirmed.

W. A. Gunter, of Montgomery, for appellant. Rushton, Williams & Crenshaw and James S. Edson, all of Montgomery, for appellees.

THOMAS, J. The bill was to clear title of clouds. The determination of the questions presented for decision requires: (1) The construction of the limitation contained in section 2296 of the Code of 1907, as to the deed of the judge of probate to the purchaser at a tax sale, and (2) the construction of certain of the provisions of the will of Sarah J. Allsop, deceased.

It is averred in the pleading that the children of said testator to whom property was devised and bequeathed were Emmie Townsend, Josie Walker, and Walter J. Allsop, who are still living; that Mary E. Shelton has since died, leaving as her only child, respondent Sadie Shelton; and that in April, 1916, the said Emmie Townsend conveyed to respondent all of her interest in said properties so devised and bequeathed by said will to her. It is further averred in the answer of respondent Walker that in the event of the death of Walter J. Allsop without children said respondent "will be entitled to a two-thirds undivided interest in the property described in the bill of complaint," and a like averment as to an undivided one-third interest in such property being in Sadie Shelton as the only child of Mary. E. Shelton, deceased, is contained in the answer of said Sadie. The special judge decreed that "respondents Josie Walker and Sadie Shelton are the owners of the two-thirds and one-third interests, respectively, in vested remainder, to take effect in possession after the death of Walter J. Allsop."

Complainant's title was derived by mesne conveyances from purchasers at tax sales, respectively, for state, county, and municipal taxes due by the said Walter J. Allsop or his trustees; the municipal taxes due being for the year 1910 or years preceding, and the state and county taxes for the year 1912. The complainant's title dated from January 11, 1913, through deed from the purchasers at said tax sales. The bill avers that complainant has since been "in the peaceable possession" of the lands; that he "found it necessary to improve the same and has done so; * * * that respondents claim some interest in the said property; and that no suit is pending to determine and settle the title to said land."

[1] It may simplify the questions for determination to first consider the legislative intent in the enactment of section 2296 of the Code, or of the concluding paragraph thereof, limiting the effect of a deed by a judge of probate to lands purchased at a sale for state and county taxes. A full understanding of this statute can be had only by a reference to its legislative history. Acts, 1884–85, pp. 21, 59, §§ 113, 114. Prior to this act of February 17, 1885, a sale of lands for unpaid taxes was held to be a sale of the fee, and not of the taxpayer's interest only. The declaration in Thorington v. Montgomery, 88 Ala. 548, 553; 7 South. 363, was that the failure to pay tax by a tenant for life may result in a sale of the entire estate, and that the assessed taxes were a lien on the land itself, as well as a legal liability of the taxpayer.

Theretofore, in Jones v. Randle, 68 Ala. 258, where the quantum of interest acquired by a purchaser at a tax sale of real estate was for decision, it was declared that the statement of law contained in Dyer v. Branch Bank of Mobile, 14 Ala. 622, that at the sale of lands assessed to a person whose duty it was to pay the taxes for the given year the purchaser acquires "only the interest of such person," was not a proper construction of the statute then of force, but that such purchaser "acquires the fee." It is to be noted that Jones v. Randle, supra, was decided at the December term, 1880, of this court, and that in 1882 this announcement was adverted to by Mr. Justice Somerville, with the observation that:

"It may be true that a purchaser at a valid tax sale acquires, not only the interest or right of the owner of the land to whom it is assessed, but good title to the land itself, free from claims of all persons." Randle, Adm'r, v. Boyd, 73 Ala. 282, 287.

To render nugatory this construction of the statute by an act for "the assessment and collection of taxes for the use of this state and the counties thereof," etc. (Gen. Acts, 1884–85, pp. 21, 59, §§ 113, 114), the Legislature provided for the execution of a deed by the probate judge, conveying to the purchaser at tax sale "all the right, title and interest of the person or persons whose duty it was to pay the tax on said land," but not conveying the "right, title or interest of any reversioner or remainderman in said land." In section 114 is embodied the provision that such deed shall vest in the purchaser "all right, title, interest and estate of the former

owner, in and to the land conveyed." The two sections define such "former owner" to be the person who had the primary duty of assessment and payment of the taxes, and thus by exclusion not a reversioner or remainderman of the legal or equitable estate. No other fair interpretation can be given this statute so soon enacted after the announcement in Jones v. Randle, supra, and the inquiry in Randle, Adm'r, v. Boyd, supra. As to reversioners and remaindermen, it was a re-enactment of the just rule announced by Chief Justice Collier in Dyer v. Branch Bank of Mobile, supra. This was:

"If the persons in possession * * * were liable to pay the tax for that year, their interest only could have been sold to enforce its payment; and if the defendant had a paramount title, dating back to a time previous, its right could not be impaired by the sale."

Dyer's Case is the sole authority for the text in Cyclopædia of Law and Procedure:

"If the laws contemplate only the sale and transfer of the title or interest of the person in whose name the property was assessed, the purchaser at a tax sale will become invested with precisely the same title which was held by the delinquent taxpayer. * * *" 37 Cyc. 1474.

Such is the rule in other jurisdictions. Hopper v. Malleson, 16 N. J. Eq. 382; Powell's Case, 95 Mo. 13, 8 S. W. 176; Morrow v. Dows, 28 N. J. Eq. 459; Nashville v. Cowan, 10 Lea (Tenn.) 209; Yenda v. Wheeler, 9 Tex. 408; Stansbury v. Inglehart, 9 Mackey (D. C.) 134; White v. Portland, 67 Conn. 272, 276, 34 Atl. 1022; Payne v. Arthur, 29 S. W. 860, 16 Ky. Law Rep. 784; Dunn v. Winston, 31 Miss. 135; Coucy v. Cummings, 12 La. Ann. 748; Hardenbergh's Case, 4 Johns. (N. Y.) 390; Estabrook v. Royon, 52 Ohio St. 318, 39 N. E. 808, 32 L. R. A. 805; Ferguson v. Quinn, 97 Tenn. 46, 36 S. W. 576, 33 L. R. A. 688, 693.

[2] Appellant insists that there are no exemptions in section 1326 as there are in section 2296 of the Code. For a full understanding of section 1326, we must have recourse to Act Aug. 13, 1907, p. 790, § 107 et seq. There it was provided that cities and towns "may levy taxes upon property and all subjects of taxation liable therefor"; that objections to assessments may be made and heard by the board of assessors for the municipality (said act, § 107; Code, § 1311); that after a valid assessment has been corrected by the council or board "it has the force and effect of a judgment against the property, or against the person owning the same, and after delinquency may be enforced by an execution * * * levied upon the personal property of the person against whom such taxes were assessed, or against the property * * * so assessed for taxation." The Act, § 108; Code, § 1313; Town of Albertville v. Hooper, 196 Ala. 642, 72 South. 258. This statute further provides (Act, § 109; Code, § 1314) that the municipality "shall have a lien for taxes upon all property assessed for taxation, which shall be superior to all other liens, except for taxes

held by the state and county"; and the purchaser receives such title upon his purchase at the sale of personal property. Code, § 1315.

The procedure for a sale is (Code, § 1319) that within a designated time after the taxes become delinquent a list shall be made out and certified by the clerk of the municipality, "describing each piece of property separately, with the name of the owner, if known, and the amount of taxes due on such property, and the amount of taxes due by such owner upon personal property, which also may be collected by a sale of the realty as for taxes due thereon"; such list of delinquents shall be filed with the register in chancery, and entered upon a docket which shall show "the amount of the taxes sought to be collected, a description of the property, and the name of the owner, if known"; summons is required to issue, as in chancery cases, "containing a description of the property, notifying each owner of the filing of the proceedings against his property," which "shall * * * be executed by the sheriff" (Act, § 110; Code, § 1320), or service of which shall be perfected by publication to unknown owner, which shall give "a list of the property assessed to owners unknown," and the same as to persons for whom a summons has been returned "not found" (Code, § 1321). After perfection of service "without further proof a final decree shall be made by the chancellor or judge of said court, adjudging such property liable for such taxes," and directing the register to sell such property for the payment of the taxes. If defense to the sale is made by the owner, the court is required to give proper relief under the rules of procedure obtaining in courts of equity. Code, § 1322. Such, in effect, are the provisions of the present statutes regulating municipalities in the collection of property taxes by the sale of the real properties of the owner, known or unknown, to whom that property is assessed. And such was the legislative intent in the enactment, as well as in the codification, of the section of the original act relied on by appellant. Code, § 1326.

In the consideration of this statute, we must inquire of the lien sought to be enforced or protected thereby. For whose taxes is the lien given, and for what property of "the owner" may the same be collected by sale of the property? Do not the statutes answer that this owner shall be him upon whom rests the primary duty of the assessment and payment of the public revenues for the present use or enjoyment of the property so taxed? Is not this the only answer to statutory provisions, such as, for example, that the assessment of real and personal properties shall be made to the owner, if known, and if not known, then to "owner unknown"; that objections to assessments must be determined at the time designated in the notice; that the effect of a valid assessment

shall be the same as that of a judgment against the person owning the property, as well as against the property; that for delinquency the payment may be enforced by an execution levied upon the personal property of the person against whom such taxes were assessed, or against the property which was so assessed; that the list of delinquents to be filed by the clerk of the municipality shall describe not only the property, but give the name of the owner, if known; that not only the amount of taxes due on such property, but the amount of taxes due by such owner upon personal property, may be collected by a sale of the realty?

Do not such salutary statutory requirements show that the legislative intent was that the title of a reversioner or remainderman shall not be subjected, by sale at the instance of a municipality, to the payment of the property taxes of a life tenant, or those of a limited present estate in the assessed property? Such must be the construction of statutes having application to such sales by municipalities; for, if it can be done, statutes should be so construed as to make it impossible for a man to lose or forfeit his lands "without ever having had the opportunity of testing by suit the legality of the proceedings, by which it is proposed to divest him of his freehold." Jones v. Randle, 68 Ala. 258, 263.

If the effect of section 1326 of the Code were that contended for, would not such construction, in cases indicated, result in the taking of the real property of reversioners and remaindermen by a municipality (under section 1319 of the Code, or section 110 of the municipal act), for the taxes due upon the personal properties of the assessed owner—the life tenant? Such construction, where the taxes on personal properties of the life tenant against whom the assessments were made are sought to be collected from the real property of such "owner" who is a remainderman or reversioner, would render the statute offensive to the constitutional provision requiring a uniform property tax (Const. § 217) if, indeed, not offensive to the "due process" clause of the fundamental law.

That the Legislature never intended that such a construction should be given to the several provisions of the municipal act (Code, § 1046 et seq.) is further shown by the provisions of sections 1314 and 1315 of the Code, to the effect that municipalities shall have a lien on property subordinate to like liens of the state and the county. The construction contended for by appellant would make the property tax lien of the municipality superior to that of the state and the county, and such was not the legislative intent (Code, §§ 1314, 1315) in declaring a harmonious system for the collection of the public revenues of the state and the municipal divisions thereof. In this system the municipality is given the right to collect the accrued and delinquent property tax of the owner on his personal, real, and mixed properties, by a sale of his assessed real properties. Code, § 1319. Thus the title of a remainderman or reversioner in that real property is not affected or impaired by such municipal sale. Lest we be misunderstood, we here remark, that this rule is not inconsistent with the efficacy of tax sales to divest the title of the mortgagee on failure of payment of taxes by the mortgagor, since the mortgagee's title is subject to and dependent on the mortgagor's primary duty to pay the assessed taxes. Code, §§ 1314, 1315.

By the sale for municipal assessments made and apportioned against real properties for local improvements (highway and sanitary), the whole estate (present and in reversion or remainder) may be affected to the extent of the apportionment on the respective estates (Troy v. Prot. Episc. Ch., 174 Ala. 380, 56 South. 982, Ann. Cas. 1914B, pp. 815, 817–820); for there is a distinction between general property taxation and a special assessment for highway and sanitary improvements (City of Huntsville v. Madison County, 166 Ala. 389, 52 South. 326, 139 Am. St. Rep. 45).

It would be inconsistent with our system of property taxation to hold that as to a tax sale by the state and county the rule of Dyer v. Branch Bank of Mobile, supra, obtains for the protection of the title of remaindermen or reversioners, but that as to a tax sale by a municipality the interests of remaindermen or reversioners, without assessment to them, may be sold for accruing property tax, real and personal, of the life tenant, upon whom the levy and assessment created the legal liability to pay, and for whose default his interest in the property may be sold under the statute, or from whom collection may be enforced by action at common law (S. & M. R. R. Co. v. Weaver, 58 Ala. 546; Greil Co. v. City of Montgomery, 182 Ala. 291, 300, 62 South. 692, Ann. Cas. 1915D, 738), or in an action of assumpsit, although a statutory action is given (Anniston v. Southern Railway Co., 112 Ala. 557, 20 South. 915; State v. Fleming, 112 Ala. 179, 20 South. 846; Greil Co. v. City of Montgomery, supra). The case of Jones v. Randle, supra, was based on a statute different from that now obtaining and that on which the decision in Thorington v. Montgomery, 88 Ala. 548, 553, 7 South. 363, rested.

The whole will of Sarah Allsop is not given in evidence or made an exhibit to the bill, but merely items 4, 5, 6, and a portion of item 8 thereof. For the purposes of this decision, it will be assumed that all parts of said will necessary to a proper construction of the instrument are before the court. This has been averred in the pleading to be true, and so treated in argument.

The next question for decision is the nature of the remainders created by the will in testator's children named therein, or in

the children in being of such. The will was before this court in Fleming v. Walker et al., 152 Ala. 386, 44 South. 536, 126 Am. St. Rep. 46, where a bill was filed by Mrs. Walker, one of appellees here, against Mrs. Allsop's executors and the trustees for Walter J. Allsop. In that litigation, apparently, it was conceded that Mrs. Allsop's will gave Mrs. Walker such an interest in remainder to the properties there in question as established her right to maintain the bill. For had she not then had a vested interest in remainder in the properties made the subject of said former suit, she could not have maintained that suit. Of that decision it is sufficient to say it is not clearly shown that the questions now presented for determination were there brought to the attention of the court, but that the interest of Mrs. Walker in the subject-matter dealt with was treated, by way of inference, as being that of a vested remainderman.

[3] It would appear that a remainderman, or a beneficiary of the trust, seeking to maintain a bill for the protection of the property, should at least have a vested interest in the trust fund, affected by the suit, though the right of enjoyment is postponed. A contingent remainderman would not appear to be a proper party plaintiff in a suit pertaining to or affecting the present ownership of the property. Ramey v. Green, Adm'r, 18 Ala. 771, 776; Sanders et al. v. Godley, 23 Ala. 473, 477; Werborn v. Austin, 77 Ala. 381; McDowell v. Brantley, 80 Ala. 173, 176; Story, Eq. Pl. § 104; Sims' Ch. Pr. § 140; 1 Perry on Trusts, § 175.

[4] It may be that a contingent remainderman or reversioner may maintain a bill for the construction of a will, or for the protection of the properties in which, by the will, he is given a prospective interest (Nabors et al. v. Woolsey, 174 Ala. 289, 56 South. 533), though this, in the writer's opinion, is contrary to the general rule of testamentary construction, or of the exercise of equity jurisdiction (40 Cyc. 1846, 1847). That such suits may sometimes be entertained at the instance of an executor or of testamentary trustees, to protect such representative or trustees under the will, and to have proper instruction touching the execution of the trust, has not been doubted. Bowers v. Smith, 10 Paige (N. Y.) 193; McArthur v. Scott, 113 U. S. 340, 5 Sup. Ct. 652, 28 L. Ed. 1015; Cross v. De Valle, 1 Wall. (U. S.) 1, 17 L. Ed. 515; 6 Rose's Notes, 273.

Item 4 of Mrs. Allsop's will recites that during the lifetime of testator's husband he had given to each of testator's other children the sum of $4,000, and that in order that no partiality be shown, and to put the said Walter upon an equality with testator's other children, she gave, devised, and bequeathed to F. M. Billing and David Fleming, as trustees for her said son Walter J., the sum of $4,000, which they should manage, invest, and control "in the same manner as herein-after directed as other property given to them in trust" for testator's said son.

In the residuary clause, item 5, the rest and residue of testator's estate is devised and bequeathed, share and share alike and to be equally divided, between testator's children Emmie Townsend, Josie Walker, Mary E. Shelton, and Walter J. Allsop, through said trustees. And in this item it is "especially enjoined upon" said trustees for the said Walter J. Allsop and "their successors in trust" that:

They shall (1) *"invest* the *principal* as they may think best," and (2) *"rent out the real estate* which may come into their hands by virtue of their position as such trustees, to the best advantage; and, after paying all taxes, assessments and other expenses attendant upon the execution of such trust, pay over the balance of the proceeds of such investment and rents to said son, Walter J., from time to time, as in the discretion of said trustees he may need it." (Italics ours.)

Item 6 provides that:

"It is my will that the principal which shall go into the hands of the said F. M. Billing and David Fleming as the trustees for my said son Walter J., shall not be impaired unless it should become absolutely necessary for his support and expenses incident to his serious illness, but only so much thereof then shall be used for the purpose intended which shall be left to the discretion of said trustees; should my said son die without children and there should be anything in the hands of the trustees belonging to said trust estate I direct that such residue shall be equally divided among my said children, or their children, the children of my children, taking collectively the part which their parent would have taken had she been living. But should my son die leaving a child or children born to him in lawful wedlock, it is my will that said trustees shall convey and deliver all the property remaining in their hands by virtue of said trusteeship to such child, or children, of my son, in equal shares, as may be living at the time of his decease or which may be born thereafter."

The portion of item 8 exhibited is as follows:

"8. (Last part.) Should any of my children die without leaving children then that part of my estate herein devised and bequeathed to such child, remaining at the time of his, or her death, I wish equally divided among my surviving children, or their children, the children of my children collectively taking that part which their parent would have taken had he or she been living, and the title to that part going to my said son Walter J. to vest in said trustees, the same as directed in items fifth and sixth of this will."

[5-7] One of the cardinal rules of testamentary construction is that the general and primary interest of the testator, evidenced by the whole instrument, must be given effect over any apparent repugnancy that may tend to be disclosed by a special or secondary interest to the contrary. Hollingsworth's Case, 65 Ala. 321; Thrasher v. Ingram, 32 Ala. 645; Miller v. Flournoy, 26 Ala. 724; Stallsworth's Case, 5 Ala. 143; Pearce v. Pearce, 74 South. 953;[1] Gibson v. Land, 27 Ala. 117; Pace v. Bonner, 27 Ala. 307; Wynne v. Walthall, 37 Ala. 37; Griffin v. Pringle, 56 Ala. 486; Nightingale v. Sheldon, 5 Mason, 336, 349, Fed. Cas. No. 10,265; 1 Schouler on Wills, § 466; 2 Jar. on Wills, 741; 1 Redf. on Wills, 420; 40 Cyc. 1393. And if there

[1] 199 Ala. 491.

be irreconcilable conflict between two items, the latter must prevail over the former, when the latter provision is consonant with the general or primary intent of the testator and consistent with his "general scheme" exhibited by the whole instrument. Gibson v. Land, 27 Ala. 117; Thrasher v. Ingram, 32 Ala. 645; Ralls v. Johnson, 75 South. 926;[2] 40 Cyc. 1417. It is further declared that the express bequest of an estate for life negatives the intent to give the entire fee, converting a superadded right of disposition into a mere power, and denying the right of property therein. Denson v. Mitchell, 26 Ala. 360, 371; Weathers v. Patterson, 30 Ala. 404; Pendley v. Madison, 83 Ala. 484, 3 South. 618; Alford's Case, 56 Ala. 355; Whorton v. Moragne, 62 Ala. 201; Head v. Lane, 186 Ala. 335, 65 South. 343; Smith v. Cain, 187 Ala. 174, 65 South. 367; Rutledge v. Crampton, 150 Ala. 275, 43 South. 822; Brant v. Vir. C. Co., 93 U. S. 326, 23 L. Ed. 927; 39 Cyc. 1089, 1090; 8 Rose's Notes, U. S. Rep. 779.

In Nabors et al. v. Woolsey, 174 Ala. 289, 292, 56 South. 533, 534, this court recently said:

"Mrs. Nabors did not get a fee under the terms of section 3423 of the Code, for the reason that she was not given the absolute power of disposition, as the power to sell was accompanied with a trust. It is true she was given the power to devise the property, independent of the qualified right to sell the same; but this right to devise was only a special power of disposition or appointment, and, under all the authorities, does not have the effect of enlarging a life estate. Weathers v. Patterson, 30 Ala. 406, and cases cited."

[8, 9] How, then, does the testator interpret her own will? The general and primary intent or dominant scheme is to save her properties for her children named, and in the event of a child's death for her or his lawful children; the special and secondary intent was to make ample provision for the necessities of her son Walter during his life. When the power of disposition is given, as to a minor part of the properties set apart for the use of the life tenant, it is so limited in application to such particular or designated properties as not to interfere with the general and primary plan or scheme of the testator exhibited in each section of the will. And this general and primary purpose of the testator in the will under review she is careful to reaffirm and declare by the last clause of the instrument.

We must give the words of the will the construction placed thereon by the testator in the context in which she uses it, having due regard for the general scheme of the testator in the will. In item 4, a principal fund of $4,000 is created for investment, subject to the management and control of the trustees "in the same manner as hereinafter directed as to other properties." Thus does the testator make a distinction between the two classes of properties set apart by her for the support and maintenance during life of her son Walter. In the next paragraph this same distinction is observed, where it is declared that the trustees shall invest the principal (meaning the $4,000) "as they think best," and "rent out the real estate to the best advantage."

This distinction between the principal to be invested, etc., and real estate which might come into the hands of the trustees to be rented out to advantage, etc., is also found in item 5. It is there declared that the principal shall not be impaired unless, and only to the extent that, it is absolutely necessary to the declared purpose to maintain the said Walter in the event of his sickness. So the power of control given as to the real estate which the trustees, under any circumstances, might exercise, was merely to rent to the best advantage. This distinction is sufficient to manifest the general and primary purpose of the testator to preserve all her properties, if possible, for her children or grandchildren, with the proviso that, under the contingency of "absolute" necessity of the said Walter, the personal properties designated, only, might be disposed of by the trustees. It is the natural and reasonable implication of Mrs. Allsop's language in each item of the will that the said Walter, nor his trustees, designated by name, or their successors in trust, should have the power of disposition of the real estate, but that they should only be permitted to use it for Walter's benefit by renting to the best advantage. This construction is not affected by the declarations as to the absolute power of disposition of properties in the first taker's enlarging the estate into an absolute fee, found in McRee's Adm'r v. Means, 34 Ala. 349; Alford's Adm'r v. Alford's Adm'r, 56 Ala. 350; Robinson et al. v. Pierce et al., 118 Ala. 273, 24 South. 984, 45 L. R. A. 66, 72 Am. St. Rep. 160; Mims v. Davis, 197 Ala. 88, 72 South. 344.

Appellant may say that, should the remainder of estate in the hands of the trustees vest in Walter's lawful children on the happening of the contingency of his marriage, and the further contingency that his wife thereafter bear child to him, the will requires the testator's representatives to convey and deliver to such child all property remaining in their hands at Walter J. Allsop's death. This provision was no more than a direction to account for the trust to such child or children on the happening of the contingencies provided against. It is significant that the words "deliver and convey" are used only as to an accounting by the trustees to Walter's lawful children, should such there be. They are not made to apply to testator's daughters named in the will, nor to their children. Such words have no controlling influence as to the property rights with which testator has invested her children and grandchildren in life, according to the

[2] 200 Ala. 178.

several specific provisions theretofore made in the will, and thereafter found in item 8. As to these, the trustees' rights over property did not extend beyond Walter's death. Thus as to children and grandchildren in being, the time of division of the estate—at Walter's death—is not made the substance of the bequest or devise; time being mentioned only in the clause qualifying the delivery of the vested estates in remainder to child, children or grandchildren.

As aptly observed by Mr. Justice Sayre in Weil v. Hill, 193 Ala. 407, 69 South. 438, it would be a strained construction to place on testator's words "remaining," "deliver," and "convey," dealing with the contingency of Walter's marriage and the birth to him of lawful children, touching the real properties set apart for Walter's use, to hold that they conferred on trustees the power to defeat testator's general and primary plan to keep such real estate for her children and their children. No such strained construction will be indulged to defeat the respondents' vested estates in remainder. Marr, Ex'r, v. McCullough, Adm'r, 6 Port. 507; Bethea v. Bethea, 116 Ala. 265, 22 South. 561; Crawford v. Engram, 153 Ala. 420, 45 South. 584; Code, §§ 3399–3401. It may be insisted that the title to the land vested in said trustees Billing and Fleming, by the terms of section 3396 of the Code. This section had not the effect to so vest the estate in the trustees, for it clearly appears from the will that "a less estate was intended" by Mrs. Allsop in the devise of real estate for Walter's use.

[10, 11] It may not be necessary that we decide the questions raised by objections to evidence. However, we will say that the bill was sought to be maintained by the purchaser of a tax title to the property. Code, § 2311; Long v. Boast, 153 Ala. 428, 44 South. 955; Doe ex dem. Evers v. Matthews, 192 Ala. 181, 186, 68 South. 182. The record shows the introduction, over the due objection of respondents, of a deed by the register in chancery executed pursuant to a sale for municipal taxes, without showing a compliance with law in order to divest the owner of his title by such sale. Evidence of such fact was necessary on the part of the purchaser of such title. Proof thereof was not dispensed with by the recitals contained in the register's deed. Baines v. Williams, 195 Ala. 525, 70 South. 644; Tidwell v. McCluskey et al., 191 Ala. 38, 41, 67 South. 673; Drennen v. White, 191 Ala. 274, 68 South. 41. That section 2297 of the Code gives to tax deeds under sales for state and county taxes the force or effect of prima facie evidence as to the regularity of all proceedings subsequent to the judgment of the probate court recited therein does not extend such probative effect to a register's deeds pursuant to sales for municipal taxes.

[12] A further inquiry is whether complainant made out his title under the deed from the judge of probate reciting a sale of the lands for the nonpayment of state and county taxes. Complainant introduced tax deeds from the judge of probate to Rice, as well as that from the register, and their deeds to him of date January 11, 1913. The answer of respondents denied that the tax sale had been made as required by law, and contended that they were void. In the absence of such averment, the burden is upon the complainant to establish his titles under the tax deeds. To do this he must show, by other evidence, that the requirements of the statute have been complied with, except where he has been relieved thereof by statute. Drennen v. White, 191 Ala. 274, 68 South. 41; Baines v. Williams, 195 Ala. 525, 70 South. 644; Smith v. Cox, 115 Ala. 503, 22 South. 78; Code, §§ 2296, 2297.

[13] May complainant rely upon section 2297 as obviating the necessity for this preliminary proof as to the tax deed of the judge of probate? The statute contains, among other things, the following:

"And it shall be, in all the courts of the state, prima facie evidence of the regularity of the proceedings subsequent to the judgment recited therein, in any controversy, proceeding, or suit involving or concerning the rights of the purchaser, his heirs, or assigns to the real estate thereby conveyed."

The former statute (Code 1896, § 4075) had made such a deed "prima facie evidence of the facts recited therein," etc. It is thus to be noted that the legislative intent in the enactment of the provision of section 2297 of the Code of 1907 was to cast on purchasers at tax sales the burden of showing compliance with all the statutory requirements as to such sales, preceding the judgment. The judgment of the probate court, recited in the judge of probate's deed, was of date May 9, 1910. In that deed it is further recited that the sale of said lands was for "the state and county taxes then due from Walter Allsop, the owner of said land, for the costs and expenses thereof," etc. The deed purports to convey only "all the right, title, and interest of the said Walter Allsop, owner aforesaid of said land, and all the right, title, interest, and claim of the state and county on account of said taxes or under said decree," etc. This was the only effect, under the statute, that could be given to the deed.

[14] One of the said jurisdictional facts or conditions precedent to a valid tax sale is that:

"The probate court of each county is empowered to order the sales of lands therein for the payment of taxes assessed on such lands, or against the owners thereof [only] when the tax collector shall report to the court that he was unable to collect the taxes assessed against such land, or any mineral, timber, or water right, or special right or easement therein, or the owner thereof, without a sale of such land." Code, § 2268.

Tax sales, unless made in strict compliance with such statutory requirements, are held void. Johnson v. Harper, 107 Ala. 706, 18 South. 198; National Bank v. Baker H. I. Co., 108 Ala. 635, 19 South. 47; Pollak v. Milam, 190 Ala. 569, 67 South. 381; Greil Bros. Co. v. City of Montgomery, 182 Ala. 291, 301, 62 South. 692, Ann. Cas. 1915D, 738; Town of Albertville v. Hooper, 196 Ala. 642, 72 South. 258.

It has been observed of this power of probate courts to order the sale of lands for taxes:

"Its (a probate court's) authority is purely statutory, and cannot arise at all except upon the collector's report that a sale of the land is necessary for the collection of the taxes. By the plain language of the statute this report of the collector is made the essential prerequisite of jurisdiction, and an order of sale without it is merely a nullity. This, like all other jurisdictional facts in these proceedings, must be affirmatively shown by the record." Lodge v. Wilkerson, 174 Ala. 133, 136, 56 South. 994, 995.

[15] Moreover, there are other jurisdictional statutory requirements essential to the validity of a tax sale; for example, due notice. Code, §§ 2269, 2271, 2272, and 2278; Pollak v. Milam, 190 Ala. 569, 67 South. 381. Notice to a life tenant or to his trustee will not bind a reversioner or remainderman without notice of an intended tax sale.

The dismissal of the bill by the special chancellor could be justified by the failure of necessary proof to support complainant's title. However, we prefer to rest the decision upon the foregoing holdings that tax deeds such as those in question do not affect the estate of reversioners or remaindermen. The decree of the special chancellor is affirmed.

Affirmed. All the Justices concur.